2008-NMCA-045

181 P.3d 708

**Vivan BELL, Petitioner–Appellant,**

v.

**The ESTATE OF Ralph M. BELL, Respondent–Appellee.**

**No. 27,392.**

Court of Appeals of New Mexico.

Feb. 21, 2008.

Certiorari Granted, April 1, 2008, No. 30,997.

Sanders, Bruin, Coll & Worley, P.A., Ian D. McKelvy Roswell, NM, for Appellant.

Tim J. O'Quinn, P.C., Tim J. O'Quinn, Tucumcari, NM, for Appellee.

## OPINION

CASTILLO, Judge.

{1} This case is before us on interlocutory appeal from probate proceedings in the district court of Quay County. Petitioner–Appellant Vivan Bell (Mrs. Bell) is the surviving spouse of Ralph M. Bell (Decedent), who executed a will and created a revocable trust approximately five months prior to his marriage to Mrs. Bell. Neither the will nor the revocable trust mentions Mrs. Bell or Decedent's anticipated marriage to Mrs. Bell. Following Decedent's death, Mrs. Bell filed a petition for adjudication of intestacy in the district court and asserted, among other things, a claim under NMSA 1978, § 45–2–301 (1995), as an omitted spouse. The district court determined that Decedent devised his estate to his adult children of a prior marriage via the will and revocable trust, and that Mrs. Bell's claim under Section 45–2–301 must therefore fail. The district court certi-

fied the issue for interlocutory appeal. For the reasons set forth below, we reverse and remand with instructions.

## I. BACKGROUND

{2} Decedent executed his will and created the Ralph Morris Bell Family Revocable Trust (Trust) on September 14, 2000. The will provides the following: "All of my estate of whatsoever kind ... I devise to the Trustee of the [Trust] to be held by said Trustee ... to be distributed as part of that Trust." In turn, the Trust provides that "[u]pon the death of [Decedent], the ... Trustee shall distribute the entire [T]rust estate, principal and accumulated income[ ] to [Decedent's] children, RALPH MACK BELL and DIXIE ROBERTA HECKENDORN, in equal shares." The Trust further states that "[i]n the event there are no living descendants entitled to distribution of the [T]rust assets, ... the Trustee shall distribute the [T]rust estate to the persons who would inherit New Mexico property from [Decedent] under the laws of the State of New Mexico in force on the date of [Decedent's] death if [Decedent] had died ... intestate[ ] and unmarried." Neither the will nor the Trust refers to Mrs. Bell in any manner, nor do they indicate that Decedent was contemplating getting married.

{3} In February 2001, approximately five months after executing the will and the Trust, Decedent married Mrs. Bell. Decedent died four years later on April 5, 2005. In addition to Mrs. Bell, Decedent was survived by two children from a prior marriage, Ralph Mack Bell (Son) and Dixie Roberta Heckendorn (collectively, Children).

{4} On November 30, 2005, Mrs. Bell filed a petition for adjudication of intestacy, determination of heirship, and formal appointment as personal representative. Mrs. Bell asserted, among other things, that Decedent died intestate with respect to Mrs. Bell under Section 45–2–301. Son filed an objection to Mrs. Bell's petition, in which he claimed that Decedent devised all of his property to Children by will and thus died testate. Son asked the district court to appoint him as personal representative and to admit Decedent's will to probate. On April 25, 2006, the district court entered an order concluding that Decedent died testate and appointing Son as personal representative.

{5} On October 19, 2006, Mrs. Bell filed a "Motion for Summary Judgment or for Finding of Law" regarding her theory that the Trust property should either be included in Decedent's estate for the purposes of calculating Mrs. Bell's intestate share under Section 45–2–301, or should be used for payment of her intestate share to the extent the probate estate proves to be inadequate. Mrs. Bell asserted that under Section 45–2–301, if the surviving spouse of a decedent married the decedent after he executed his will, the surviving spouse is entitled to receive, as an intestate share, no less than the value of the share of the estate she would have received if the decedent had died intestate. Mrs. Bell further claimed that no material facts were in dispute and that none of the exceptions to Section 45–2–301 applied.

{6} Respondent–Appellee the Estate of Ralph M. Bell (Estate) filed a response in opposition to Mrs. Bell's motion and claimed that Section 45–2–301 only applies to that portion of the testator's estate that is not devised to the testator's child born before the testator married the surviving spouse and who is not a child of the surviving spouse. The Estate asserted that Decedent devised all of his property to Children via the Trust and that Decedent provided for Mrs. Bell by transfer outside of the will, thus triggering one of the exceptions listed in Section 45–2–301. More specifically, the Estate claimed that Decedent provided Mrs. Bell with $7,000.00 in life insurance proceeds, approximately $2,900.00 per month in retirement income, medicare coverage through Decedent's social security account, and long-term health care. Mrs. Bell filed a reply in which she asserted that these benefits did not constitute a transfer outside of the will under Section 45–2–301 and that Children are not devisees of Decedent's property, but instead are beneficiaries under the Trust.

{7} Following a hearing on Mrs. Bell's motion for summary judgment, the district court found that the will and Trust taken together indicated Decedent's intent to devise his property to Children. The district

court further concluded that Mrs. Bell was not entitled to a share of Decedent's estate as an omitted spouse, though she was entitled, under NMSA 1978, § 46A–5–505(A)(1) (2003), to invade the Trust corpus to satisfy the family and personal property allowances set forth in NMSA 1978, § 45–2–402 (1995), and NMSA 1978, § 45–2–403 (1999). The district court emphasized, however, that the sole basis for its denial of summary judgment was its finding that Decedent devised his estate to Children and therefore Section 45–2–301 did not apply. The district court did not rely on the exception to Section 45–2–301 regarding transfers in lieu of a testamentary devise. The district court delayed ruling on whether that exception precluded Mrs. Bell from receiving even the statutory allowances.

{8} The district court's order denying Mrs. Bell's motion for summary judgment recited, in relevant part, the following:

> [Mrs.] Bell is the surviving spouse of [Decedent] and married . . . Decedent after he executed his Will, which was admitted to probate in this matter. There was no provision made for [Mrs.] Bell in the Will or the Trust. However, the [c]ourt finds under [Section] 45–2–301 . . . the Will and the . . . Trust . . . reflect that the property of . . . Decedent was devised to children of [Decedent] who were born before [Decedent] married [Mrs.] Bell, and who are not children of [Mrs.] Bell; therefore, [Mrs.] Bell is not entitled to take any intestate share under [Section] 45–2–301 as an omitted spouse. As a result of the [c]ourt's ruling on the basis of the Will and the Trust ..., the [c]ourt finds it does not need to hear any evidence regarding the intent of [Decedent] for purposes of [Section] 45–2–301.

The district court further concluded that Mrs. Bell's right to invade the Trust corpus to satisfy the statutory allowances would be subject to the Estate's evidence regarding whether Decedent made a transfer to her outside of the will in lieu of making a testamentary provision for her. Finally, the district court certified for interlocutory appeal the question of whether Children are devisees for the purposes of Section 45–2–301.

We granted Mrs. Bell's subsequent application for interlocutory appeal.

{9} Mrs. Bell challenges the district court's denial of her share of Decedent's estate under Section 45–2–301 on the basis of the court's finding that Children were devisees, instead of beneficiaries. Mrs. Bell also addresses the questions of how an omitted spouse's intestate share should be calculated and satisfied. The Estate urges us to affirm on the basis that (1) Decedent's testamentary intent to devise his property to Children is clear from the will and the Trust and that (2) Decedent adequately provided for Mrs. Bell outside of the will, which satisfies the exception set forth in Section 45–2–301(A)(3). We note at the outset, however, that the district court expressly did not make its ruling on the basis of this subsection and did not certify that issue for interlocutory appeal. Accordingly, we do not reach that issue.

{10} We consider and determine the issue regarding Children's status. For the purpose of guidance, we also address the application of Trust assets with respect to the omitted spouse's intestate share. Last, we review sua sponte an issue not raised in the briefs: the validity of the district court's determination that Mrs. Bell's right to statutory allowances is contingent upon whether Decedent made a transfer to her outside of the will. We begin with the question of whether Children were devisees within the meaning of Section 45–2–301.

## II. DISCUSSION

### A. Definition of "Devisee" Under Section 45–2–301

{11} We review the district court's interpretation of Section 45–2–301 de novo. *See Grine v. Peabody Natural Res.*, 2006–NMSC–031, ¶ 17, 140 N.M. 30, 139 P.3d 190 ("This Court reviews the interpretation of a statute de novo." (internal quotation marks and citation omitted)). "Our main goal in statutory construction is to give effect to the intent of the legislature." *Id.* (internal quotation marks and citation omitted). "We do not depart from the plain language of a statute unless we must resolve an ambiguity, correct a mistake or absurdity, or deal with a conflict between different statutory provi-

sions." *N.M. Bd. of Veterinary Med. v. Riegger,* 2007–NMSC–044, ¶ 11, 142 N.M. 248, 164 P.3d 947.

{12} Section 45–2–301 provides, in relevant part, the following:

A. If a testator's surviving spouse married the testator after the testator executed his will, the surviving spouse is entitled to receive, as an intestate share, no less than the value of the share of the estate he would have received if the testator had died intestate as to that portion of the testator's estate, if any, that neither is devised to a child of the testator who was born before the testator married the surviving spouse and who is not a child of the surviving spouse nor is devised to a descendant of such a child or passes pursuant to Section 45–2–603 or 45–2–604 NMSA 1978 to such a child or to a descendant of such a child, unless:

(1) it appears from the will or other evidence that the will was made in contemplation of the testator's marriage to the surviving spouse;

(2) the will expresses the intention that it is to be effective notwithstanding any subsequent marriage; or

(3) the testator provided for the spouse by transfer outside the will and the intent that the transfer be in lieu of a testamentary provision is shown by the testator's statements or is reasonably inferred from the amount of the transfer or other evidence.

{13} In the present case, the following is undisputed: (1) Mrs. Bell married Decedent after he executed his will, (2) the will contained no provision for Mrs. Bell, (3) the will does not reflect that it was made in contemplation of Decedent's marriage to Mrs. Bell, and (4) the will does not express the intention that it is to be effective notwithstanding Decedent's marriage to Mrs. Bell. Therefore, the only question that remains regarding the application of Section 45–2–301 in the present appeal is whether Decedent's devise of his property to the Trust constituted a devise to Children.

{14} *Black's Law Dictionary* defines "devise" as the following:

*n.* 1. The act of giving property by will. . . . 2. The provision in a will containing such a gift. 3. Property disposed of in a will. 4. A will disposing of property.

. . . .

*vb.* To give (property) by will.

*Black's Law Dictionary* 483–84 (8th ed.2004). *Black's Law Dictionary* defines "devisee" as "[a] recipient of property by will." *Id.* at 484. Similarly, our legislature specifically defined "devise" in the New Mexico Uniform Probate Code as "a testamentary disposition of real or personal property [or] to dispose of real or personal property by will." NMSA 1978, § 45–1–201(A)(9) (1995). The legislature defined a "devisee" as "a person designated in a will to receive a devise." Section 45–1–201(A)(10).

{15} These definitions focus on the transfer of property through a will; nothing in the definitions suggests that the beneficiaries of a trust are also "devisees" of the trust assets. To the contrary, Section 45–1–201(A)(10) states that "[f]or the purposes of Chapter 45, Article 3 NMSA 1978 [regarding probate of wills and administration], in the case of a devise to an existing trust or trustee or to a trustee or trust described by will, *the trust or trustee is the devisee and the beneficiaries are not devisees.*" *Id.* (emphasis added). The definitions of "devise" and "devisee" set forth in Section 45–1–201 are for use throughout the Uniform Probate Code, which includes Section 45–2–301. *See* § 45–1–201(A).

{16} In the present case, Decedent's will unambiguously devised his entire estate to the *Trustee* of the Trust, not to the Trust's beneficiaries. Therefore, under the plain language of Section 45–2–301, Decedent's estate was not "devised" to Children.

{17} The Estate argues that this is an overly technical reading of the statute that cuts against Decedent's intent—as reflected in the will and the Trust–to leave his assets to Children. This argument fails for two reasons. First, neither the will nor the Trust reflects Decedent's intent *with respect to Mrs. Bell,* as required by Section 45–2–301. It is clear from the statute that an omitted

spouse is entitled to receive an intestate share, unless the testator expresses an intent to the contrary, either in the will itself or through a transfer outside of the will in lieu of a testamentary provision. *See* § 45–2–301(A). As mentioned previously, neither the will nor the Trust mentions Mrs. Bell, nor has the record been fully developed with respect to whether there has been a transfer outside of the will under Section 45–2–301(A)(3). By drafting Section 45–2–301 and the exceptions contained therein, the legislature obviously understood that a will executed prior to the testator's marriage might not reflect the testator's intent with regard to the omitted spouse. Therefore, the Estate's argument merely begs the question regarding Decedent's intent with respect to Mrs. Bell.

{18} Second, and perhaps more important, the testator's intent does not control in all situations. We have previously noted that the legislature's intent in providing a surviving spouse with control over statutory allowances supersedes testator intent. *See In re Estate of Jewell,* 2001–NMCA–008, ¶¶ 12–14, 130 N.M. 93, 18 P.3d 334. Similarly, we have observed that "in enacting the Probate Code, the legislature created, under certain circumstances, an intestate share for an omitted spouse." *In re Estate of Coleman,* 104 N.M. 192, 194, 718 P.2d 702, 704 (Ct.App.1986). As the South Carolina Court of Appeals has observed, "[t]he omitted spouse statute attempts to accomplish two ends—carrying out the decedent's probable intent and protecting the still-surviving spouse." *Green ex rel. Estate of Cottrell v. Cottrell ex rel. Estate of Cottrell,* 346 S.C. 53, 550 S.E.2d 324, 329 (Ct.App.2001) (internal quotation marks and citation omitted). Our legislature has chosen to balance these interests by providing an omitted spouse with an intestate share, as long as the exceptions regarding the testator's intent are not met.

{19} In sum, under ideal conditions, a testator who intends to marry will modify his or her pre-existing will to reflect his or her testamentary intent with regard to the new spouse. If, for whatever reason, the testator fails to do so, Section 45–2–301 provides several mechanisms for determining the testa-

tor's intent with regard to the omitted spouse. If those mechanisms fail to reveal that intent, our legislature has determined that the omitted spouse is entitled to an intestate share of the testator's estate.

{20} We have already stated that the record before us in this case does not reflect that any of the exceptions in Section 45–2–301 have been met. On remand, the district court should hold an evidentiary hearing to determine whether Decedent made a transfer outside of the will with the intent that the transfer be in lieu of a testamentary provision under Section 45–2–301(A)(3). If that exception is not met, the legislative intent of protecting the omitted spouse must control, and Mrs. Bell is entitled to receive an intestate share of Decedent's estate. We now turn to the questions regarding the application of the Trust assets to the satisfaction of the intestate share—questions we address to provide guidance on remand if necessary.

### B. Trust Assets and Intestate Share

{21} According to Mrs. Bell, the Estate has taken the position that the assets in the probate estate are insufficient to satisfy the family and personal property allowances. If this is the case, it follows that although Mrs. Bell may be entitled to an intestate share, the probate estate may very well be insufficient to actually make any distribution. To address this potential problem, Mrs. Bell makes two arguments. First, she contends that the Trust assets should be included in the probate estate for purposes of calculating and satisfying her intestate share. In the alternative, Mrs. Bell asserts that because Section 46A–5–505(A)(3) instructs that a revocable trust may be invaded to satisfy the creditors of the decedent and to satisfy the family statutory allowances and because the Trust was a revocable trust, assets from the Trust should also be available to satisfy an omitted spouse's intestate share. We address these arguments in turn.

### 1. The Probate Estate

{22} Mrs. Bell points out that the New Mexico Uniform Probate Code defines the term "estate" to include generally "the property of the decedent, trust or other per-

son whose affairs are subject to the Uniform Probate Code as originally constituted and as it exists from time to time during administration." Section 45–1–201(A)(12). Section 45–1–201(A) provides definitions for the entire Probate Code-to be applied, "unless the context otherwise requires." While Mrs. Bell is correct that the term "estate" can include the property of a trust, her argument disregards the distinction between a trust estate and a probate estate.

{23} The Restatement (Third) of Property: Wills and Other Donative Transfers § 1.1(a) (1999) defines "probate estate" as "the estate subject to administration under applicable laws relating to decedents' estates." This section continues as follows: "The probate estate consists of property owned by the decedent at death and property acquired by the decedent's estate at or after the decedent's death." *Id.* Decedent funded the Trust before he died. After funding the Trust, Decedent no longer owned those assets because they became the property of the Trust and because the title to the assets was thus in the Trustee. *See* George Gleason Bogert & George Taylor Bogert, *The Law of Trusts and Trustees* § 1, at 4–5 (revised 2d ed.1984). Decedent's continued control over the assets as Trustee did not make these assets a part of the probate estate. *See* Restatement (Third) of Trusts § 25(1) (2003). Upon Decedent's death, the Trust directed that the property in the Trust was to be transferred to the beneficiaries; the Trust property never became a part of the probate estate. We conclude that the Trust assets are *not a part of the probate estate* and therefore cannot be used to calculate or satisfy the intestate share.

## 2. Section 46A–5–505(A)(3)

{24} Relying on the language in Section 46A–5–505(A)(3), Mrs. Bell likens her intestate share to a creditor's claim or a statutory allowance, both of which may be paid by a trust that was revocable at the settlor's death. In pertinent part, Section 46A–5–505(A)(3) states the following:

[A]fter the death of a settlor, and subject to the settlor's right to direct the source from which liabilities will be paid, the property of a trust that was revocable at the settlor's death is subject to claims of the settlor's creditors, costs of administration of the settlor's estate, the expenses of the settlor's funeral and disposal of remains and statutory allowances to a surviving spouse and children to the extent the settlor's probate estate is inadequate to satisfy those claims, costs, expenses and allowances.

"When construing statutes, our guiding principle is to determine and give effect to legislative intent." *N.M. Indus. Energy Consumers v. N.M. Pub. Regulation Comm'n,* 2007–NMSC–053, ¶ 20, 142 N.M. 533, 168 P.3d 105. We examine "the plain language of the statute, giving the words their ordinary meaning, unless the [l]egislature indicates a different one was intended." *Id.* Section 46A–5–505(A)(3) allows a revocable trust to be invaded in two relevant instances: to satisfy the claims of creditors and to provide the surviving family with the statutory allowances. We can see no legislative intent in the plain language of the statute that would allow an omitted spouse to invade a trust corpus to determine or satisfy an intestate share.

{25} Section 45–2–402 and Section 45–2–403 entitle a decedent's surviving spouse to a family allowance of $30,000 and a personal property allowance of up to $15,000. A spouse is entitled to that minimum allowance regardless of the existence of a will. *See id.* Mrs. Bell suggests that because an omitted spouse is addressed by statute, Section 45–2–301, the omitted spouse statute operates as a statutory allowance. We are not persuaded. Section 45–2–301(A) clearly states that an omitted spouse is entitled to receive an intestate share, not an allowance. An intestate share for a surviving spouse is calculated according to NMSA 1978, § 45–2–102 (1975), which considers community and separate property, as well as any surviving issue of the decedent. In fact, Section 45–2–402 acknowledges that the family allowance is "in addition to any share passing to the surviving spouse or minor or dependent children by intestate succession." Section 45–2–403 has similar language. We thus conclude that the intestate share of an omitted spouse is not a

statutory allowance as contemplated by Section 46A–5–505(A)(3). *See Jewell,* 2001–NMCA–008, ¶ 5, 130 N.M. 93, 18 P.3d 334 (identifying the statutory allowances as the family allowance and the personal property allowance found in Sections 45–2–402 and –403).

{26} Mrs. Bell also relies on *Sieh v. Sieh,* 713 N.W.2d 194 (Iowa 2006). In *Sieh,* the decedent created and funded a revocable trust with his children as beneficiaries. *Id.* at 195. The decedent later remarried and did not alter his will or the trust. *Id.* After the decedent died, the widow attempted to include the trust assets in the calculation of her share of the estate. *Id.* at 196. The probate court would not allow the widow to invade the trust, but the Supreme Court of Iowa reversed the district court and allowed "the assets in the revocable trust to be included in the statutory share of [the decedent]'s spouse electing against the will." *Id.* at 198–99. The Supreme Court of Iowa noted that it was "influenced by the fact that [it had] previously recognized the right of a general creditor to proceed against the assets in a revocable inter vivos trust for purposes of satisfying a valid claim filed in the estate of the settlor." *Id.* at 198.

{27} We acknowledge first that *Sieh* involved Iowa's elective share statute, which allowed the surviving spouse to elect to receive a statutory percentage of the decedent's assets, rather than the share indicated by the will. *Id.* at 195–96. New Mexico does not operate under an elective share system but, instead, compensates a forgotten spouse under the omitted spouse statute and intestate succession. *See* § 45–2–301; *see also* W.S. McClanahan, *Community Property Law in the United States* § 11:5, at 513 (1982). In *Sieh,* the Court "relied on the principle that a trust settlor should not be allowed to retain all the benefits of ownership without assuming any of the burdens." 713 N.W.2d at 198. We consider the claims of creditors and the statutory claims of a spouse or children to represent adequately the burdens of ownership, and those burdens may be satisfied with the assets of a revocable trust. *See* § 46A–5–505(A)(3). We agree that "the rights of a surviving spouse should

not be less favored than the interests of general creditors." *Sieh,* 713 N.W.2d at 198. New Mexico's legislature, however, has implemented statutory protection for the surviving spouse in the form of the family and personal property allowances. We can determine no need to enlarge artificially the probate estate in order to protect further the rights of surviving omitted spouses. *See* § 45–2–402; *Jewell,* 2001–NMCA–008, ¶ 9, 130 N.M. 93, 18 P.3d 334 (reviewing the protections offered by the statutory allowances).

{28} Mrs. Bell also relies on *Coleman,* 104 N.M. at 194–95, 718 P.2d at 704–05, in support of her position. She argues that this Court, in *Coleman,* has already recognized that a surviving spouse can have access to trust assets under Section 45–2–301. We do not agree with Mrs. Bell's interpretation of our language in *Coleman.*

{29} *Coleman* dealt with the proper distribution of the probate estate to an omitted spouse when the decedent intentionally excluded his son in the will. 104 N.M. at 192–93, 718 P.2d at 702–03. We concluded that although the decedent's son was not entitled to any part of the estate, he still would have been "entitled to share in his father's estate had his father died intestate" and that the son would therefore still be considered " 'issue' " for purposes of calculating the intestate share. *Id.* at 194, 718 P.2d at 704. Consequently, we held that the omitted spouse was entitled to a one-fourth intestate share of the estate because the decedent was survived by issue, who was also due to receive an intestate share. *Id.* at 194–95, 718 P.2d at 704–05. With this as background, we turn to the language on which Mrs. Bell relies:

The purpose of [providing an omitted spouse with an intestate share] is to preserve the remainder of the will. Thus, if a widower executed a will creating a trust for his children and later remarried, the second wife would obtain the same share as if the husband had died intestate, but the trust would be preserved as to the remainder of his property.

*Id.* (internal quotation marks and citation omitted). *Coleman* instructs that once the

intestate share of an omitted spouse is calculated and distributed, the trust would still be preserved and funded by the remainder of the decedent's probate estate. The trust referred to in *Coleman*, however, was a trust created by will-a testamentary trust. *See* Restatement (Third) of Trusts § 17(1) (2003) ("A testamentary trust is one created by a valid will."). In the case before us, Decedent created an inter vivos trust in a separate document-a non-testamentary trust. *See* Restatement (Third) of Trusts § 17 cmt. a. The Trust was funded during Decedent's lifetime, and his will directed that the net assets of the probate estate were to pour over to the Trust upon Decedent's death. The language in *Coleman* does not concern a non-testamentary trust; however, to the extent that a will makes a non-testamentary trust a devisee, that trust, too, would be funded by the remainder of a decedent's probate estate, after the calculation of the omitted spouse's intestate share. The question *Coleman* does not address is whether the contents of a non-testamentary trust, funded before the death of the settlor, should be included in the probate estate for the calculation of the intestate share.

{30} We disagree with the dissent's conclusion that our holding is based on policy. While we agree that Mrs. Bell would like this Court to reverse the district court's determination based on policy—and the dissent is in agreement—we are not at liberty to do so. Our holding is based on longstanding probate and estate law, as well as a plain reading of the pertinent statutes. It is up to the legislature to change the current law to allow the assets of a non-testamentary revocable trust to be available to satisfy the omitted spouse's share. This cannot be done by our Court.

{31} We are also concerned that the dissent's approach creates a slippery slope. Section 45–2–301 contains competing policies. It protects the omitted spouse, but it also protects children born before the testator married the surviving spouse (pre-marriage children) by exempting from the calculation of an omitted spouse's intestate share that portion of the testator's estate devised to pre-marriage children. Section 45–2–301(A). We have already held that policy in Section 45–2–301 does not apply to Children in the

present case because the will did not devise assets to Children as pre-marriage children, but rather to the Trust. As a result, we concluded that if the exception under Section 45–2–301(A)(3) is not met, Mrs. Bell is entitled to receive an intestate share of Decedent's estate. Paragraph 20 of this opinion.

{32} By the terms of the Trust, Decedent directed that the assets in the Trust at the time of death be transferred to Children. There is no language in Section 45–2–301 or Section 45–2–102 regarding the use of trust assets to satisfy the omitted spouse's intestate share. Nor is there language regarding what to do with trust assets that are to be transferred to pre-marriage children. A policy that allows the omitted spouse's intestate share to be satisfied from a non-testamentary revocable trust without consideration of the effect of the policy on pre-marriage children arbitrarily selects one of the competing policies found in Section 45–2–301 without any legislative guidance. By relying on New Mexico law and by limiting our review to the plain language of the statutes, we eliminate the creation of new policy questions that must be answered in a vacuum.

{33} Accordingly, we conclude that (1) a funded revocable trust is not a part of the probate estate and (2) an omitted spouse may not access the assets of a non-testamentary revocable trust in order to satisfy his or her intestate share. We therefore hold that Mrs. Bell may not invade the corpus of the Trust in order to calculate or satisfy her intestate share under Section 45–2–301.

**C. Statutory Allowances Under Sections 45–2–402 and –403**

{34} The district court concluded in its order that Mrs. Bell's right to use the Trust assets to satisfy her statutory allowances would be subject to evidence regarding whether Decedent had transferred any property to her in lieu of the allowances. Although the parties did not raise the issue in their briefs, we address it sua sponte because the district court erred as a matter of law in this regard.

{35} The family and personal property allowances are set forth in Sections 45–2–402

and –403, respectively. Neither statute provides an exception to the allowances based on a transfer in lieu of allowance. To the contrary, both statutes explicitly state that the allowance is "in addition to any [benefit or] share passing to the surviving spouse ... by intestate succession or by the decedent's will, unless otherwise provided by the decedent *in the will or other governing instrument*." Sections 45-2-402, –403 (emphasis added). As mentioned previously, it is undisputed that neither the will nor the Trust makes a provision for Mrs. Bell or mentions her in any regard. Moreover, we have previously stated that "the legislature has ensured that the surviving spouse, not the testator, has control over the statutory allowances." *Jewell*, 2001–NMCA–008, ¶ 14, 130 N.M. 93, 18 P.3d 334. We therefore hold that transfers outside of a will cannot offset or preclude the statutory allowances set forth in Sections 45-2-402 and –403.

### III. CONCLUSION

{36} We reverse the district court's order and remand for further proceedings consistent with this opinion.

{37} **IT IS SO ORDERED.**

I CONCUR: JONATHAN B. SUTIN, Chief Judge.

MICHAEL D. BUSTAMANTE, Judge (concurring in part and dissenting in part).

{38} I concur in all of the majority opinion except Section B. In Section B the majority refuses to allow the Trust to be used to help satisfy Mrs. Bell's claims under the omitted spouse statute on the theory that it should not be deemed a "statutory allowance" under Section 46A-5-505(A)(3). The majority asserts that using Trust assets to satisfy the obligation created by the omitted spouse statute would "artificially" enlarge the probate estate; the majority refuses to do so as a matter of policy.

{39} I do not share the majority's concern or view. If the legislature intended omitted spouses to be limited to the specific monetary allowance provided in Section 45-2-402, there would be no need to address separately the issue of omitted spouses. The effect of the majority's position is to artificially limit a benefit created by the legislature. The perverse effect of this limit is most evident when the deceased places most or all of a large estate in a revocable inter vivos trust. The monetary allowance of Section 45-2-402 may be dwarfed by the size of the total estate. I see no rhyme or reason behind the majority's decision to potentially punish omitted spouses in such a situation. There is no reason evident from the provisions or structure of the Probate Code, which requires that the omitted spouse statute be given less protection than the statutory allowance. There is no rhyme to treating omitted spouses less favorably than general creditors of the estate. To do so seems to me bad policy and contrary to the legislative intent behind the omitted spouse statute.

{40} The purpose of an omitted spouse statute is to guard against unintentional disinheritance. *See In re Estate of Moi*, 136 Wash.App. 823, 151 P.3d 995, 997 (2006) ("An omitted spouse statute's purpose is to prevent the unintentional disinheritance of the surviving spouse of a testator who marries after making a will and then dies without ever changing it." (internal quotation marks and citation omitted)). Section 45–2–301(A) provides an omitted spouse with an intestate share of the testator's estate, unless any of three exceptions are met. *See* § 45–2–301(A)(1)–(3). By enumerating these exceptions, the legislature has set forth specific situations from which the testator's intent with regard to the omitted spouse can be inferred so as to overcome the general purpose of the statute. When none of the exceptions applies, the general purpose of the statute remains in effect.

{41} Nevertheless, the majority concludes that assets held in a revocable inter vivos trust are insulated from this general purpose. There is nothing sacrosanct about a revocable inter vivos trust. If a trust can be invaded for the purpose of satisfying statutory allowances and debts owed to creditors of the estate, there is no reason why it cannot also be used to satisfy an omitted spouse's intestate share under Section 45–2–301.