J-A25017-15

2015 PA Super 271

| IN RE: TRUST UNDER DEED OF DAVID P. KULIG DATED JANUARY 12, 2001 | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| APPEAL OF: CARRIE C. BUDKE AND JAMES H. KULIG | |
| | No. 2891 EDA 2014 |

Appeal from the Decree September 12, 2014
In the Court of Common Pleas of Bucks County
Orphans' Court at No(s): No. 2013-0179

BEFORE:  DONOHUE, J., MUNDY, J., and FITZGERALD, J.[*]

OPINION BY MUNDY, J.:                    **FILED December 24, 2015**

Appellants Carrie C. Budke and James H. Kulig, children of David P. Kulig (hereinafter Decedent or Settlor), appeal from the September 12, 2014 decree in a declaratory judgment action awarding Mary Jo Kulig, surviving spouse of Decedent, a one half share of the assets in the revocable "Trust Under Deed of David P. Kulig."  After careful review, we are constrained to affirm.

The essential facts of this case were presented to the orphans' court as a stipulation of the parties and can be summarized as follows.  Settlor, on January 12 2001, executed a revocable deed of trust (the Trust), with

_____

[*] Former Justice specially assigned to the Superior Court.

himself as trustee, for the benefit of himself and his then spouse, Joanne C. Kulig (Joanne), and their issue. Joanne died on August 15, 2010. On December 13 2010, Decedent executed a last will and testament. On December 30, 2011, Decedent married Appellee, Mary Jo Kulig (Mary Jo). Although recommended by his attorney, Decedent opted not to enter into a prenuptial agreement prior to his marriage to Mary Jo. The parties agree that the December 13, 2010 will was not made in contemplation of Decedent's subsequent marriage to Mary Jo. Decedent died on February 3, 2012. His wife, Mary Jo, and his two children from his marriage with Joanne, Carrie C. Budke and James H. Kulig (the Kulig Children) survived Decedent.

Upon the death of Settlor, Pasquale Hamel, succeeded as trustee of the Trust and was appointed executor of Decedent's estate. The terms of the Trust provided that upon Settlor's death, if Joanne predeceased him, the principal balance in the Trust would be held in trust for the Kulig Children or their issue and eventually distributed according to the terms of the trust. As of the date of Settlor's death, the value of the assets in the Trust was $3,257,184.74. The estimated gross value of Decedent's probate estate is $2,106,417.26.[1]

_____

[1] Mary Jo also received a qualified benefit plan payment of $1,500,000.00 pursuant to the Employee Retirement Income Security Act ERISA, 29 U.S.C.A. §§ 1001-1461. Other assets not claimed by Mary Jo, and therefore not at issue in this appeal, include two irrevocable trusts valued at
*(Footnote Continued Next Page)*

Mary Jo claims her intestate share of Decedent's estate pursuant to 20 Pa.C.S.A. § 2507(3), which she avers includes the principal of the Trust by virtue of 20 Pa.C.S.A. § 7710.2. The Kulig Children concede Mary Jo is entitled to an intestate share of the probate estate as a pretermitted spouse under Section 2507(3), but dispute the same applies to the corpus of the Trust.[2] Accordingly, the Kulig Children, on March 15, 2013, filed a petition for declaratory judgment before the orphans' court of Bucks County Pennsylvania, for a determination of whether Mary Jo is entitled to any share of the Trust. Following completion of the pleadings, the parties submitted a "Joint Stipulation of Facts" on June 11, 2014. The parties subsequently submitted memoranda of law in support of their respective positions. On September 12, 2014, the orphans' court issued judgment in favor of Mary Jo. The decree provides as follows.

> AND NOW, this 12th day of September, 2014, upon consideration of the Petition for Declaratory Judgment filed by Carrie C. Budke and James H. Kulig, the Answer with New Matter filed by Respondent Mary Jo Kulig in opposition thereto, after a hearing held before the undersigned on June 11, 2014, and after the submission of briefs from Petitioners, Respondent, and Pasquale Hamel,

_(Footnote Continued)_ ───────────────

approximately $5,500,000.00 and an IRA valued at approximately $1,100,000.00. Orphans' Court Memorandum Opinion, 9/12/14, at 3 n.2. A second declaratory judgment action pertaining to a trust created by Joanne, was ruled in favor of the Kulig Children, and is not a subject of this appeal.

[2] A pretermitted heir is defined as "[a] child or spouse who has been omitted from a will…." BLACK'S LAW DICTIONARY 742 (8th ed. 2004).

Executor of the Estate of David P. Kulig, deceased and Successor Trustee of the above-captioned trust, it is hereby ORDERED and DECREED that pursuant to the Declaratory Judgments Act, 42 Pa.C.S. § 7531, et seq., declaratory judgment is entered as follows:

1.    Pursuant to 20 Pa.C.S. § 2507(3), Mary Jo Kulig, surviving spouse to David P. Kulig, is entitled to receive the share of her late husband's estate that she would have been entitled to had he died intestate.

2.    Pursuant to 20 Pa. C.S. § 2102(4), Mary Jo Kulig is entitled to receive one-half of her late husband's estate.

3.    The assets held in the revocable Trust Under Deed of David P. Kulig, dated January 12, 2001, are subject to 20 Pa.C.S. § 2507(3), as provided in 20 PA. C.S. § 7710.2, and the legislative comments thereto.

4.    Mary Jo Kulig, surviving spouse to David P. Kulig, is entitled to receive a one-half share of the assets in the Revocable Trust Under Deed of David P. Kulig, dated January 12, 2001.

Orphans' Court Decree, 9/12/14, at 1-2. The Kulig Children filed a timely notice of appeal on October 2, 2014.[3]

On appeal, the Kulig Children raise the following issue for our consideration.

As a matter of law, is a revocable trust that was created and funded by the settlor before his second marriage, and was intended to benefit the settlor's

---

[3] The Kulig Children and the orphans' court have complied with Pennsylvania Rule of Appellate Procedure 1925. In its Rule 1925(a) opinion, the orphan's court incorporated its September 12, 2014 memorandum opinion as containing its reasons for its contested ruling.

- 4 -

first spouse and children from his first marriage and not the settlor's second spouse, "subject to 20 Pa.C.S. § 2507(3), as provided in 20 Pa.C.S. § 7710.2, and the legislative comments thereto" and thereby subject to a pretermitted spouse's share, notwithstanding that the provisions of the cited statutes do not state as much and such interpretation reverses Pennsylvania law regarding property rights of surviving spouses?

Kulig Children's Brief at 3.

In addressing this question, we first note the applicable standard and scope of our review. "When the Orphans' Court arrives at a legal conclusion based on statutory interpretation, our standard of review is *de novo* and our scope of review is plenary." *In re Trust Under Agreement of Taylor*, --- A.3d ---, 2015 WL 5474319, at *2 (Pa. Super. 2015) (citation omitted). "The object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly." 1 Pa.C.S.A. § 1921(a).

> When a statute is not explicit, we consider a variety of factors to ascertain the legislative intent, including the object of the provision and the consequences of different interpretations. Absent a definition, statutes are presumed to employ words in their popular and plain everyday sense, and popular meanings of such words must prevail.

*In re Vencil*, 120 A.3d 1028, 1034-1035 (Pa. Super. 2015) (citations omitted).

> It is only when the words of a statute are not explicit that a court may resort to other considerations in order to ascertain legislative intent. Consistently with the Statutory Construction Act, this Court has

- 5 -

repeatedly recognized that rules of construction are to be invoked only when there is an ambiguity.

***Taylor, supra*** (citation omitted). "Statutory provisions relating to the same subject must be read in *pari materia.*" ***Pilchesky v. Lackawanna Cnty.***, 88 A.3d 954, 965 (Pa. 2014), *citing* 1 Pa.C.S.A. § 1932.

"Statutes uniform with those of other states shall be interpreted and construed to effect their general purpose to make uniform the laws of those states which enact them." 1 Pa.C.S.A. § 1927. "Official comments are to be given weight in the construction of statutes." ***Lessner v. Rubinson***, 592 A.2d 678, 680, n.4 (Pa. 1991) (citations omitted). However, to the extent a comment conflicts with the text of a statute, the text controls. 1 Pa.C.S.A. § 1922.[4]

At issue in this case is the proper interpretation and application of Section 7710.2 of the Uniform Trust Act (UTA), enacted by our legislature

---

[4] The prefatory comments to Chapter 77 of the Probate, Executor, and Fiduciary Code (PEF Code) at issue in this appeal, reiterate this principle.

> The comments provided throughout this chapter were reproduced from the April 2005 Joint State Government Commission's Report of the Advisory Committee on Decedents' Estates Laws, proposing the Pennsylvania Uniform Trust Act, as edited by the Commission to reflect legislative amendments during the process of enactment. These comments may be used in determining the intent of the General Assembly. ***See*** 1 Pa.C.S. § 1939 and ***In re Martin's Estate***, 365 Pa. 280, 74 A.2d 120 (1950).

20 Pa.C.S.A., Ch. 77, Refs & Annos.

effective November 6, 2006, as it pertains to the rights of a pretermitted spouse. This raises a question of first impression in this Commonwealth. As noted above, the facts of this case are not in dispute. The parties agree the facts establish that neither the December 13, 2010 will nor the January 12 2001 Trust include any provision for Mary Jo, or were executed in contemplation of Decedent's marriage to Mary Jo, thus qualifying her as a pretermitted spouse. Kulig Children's Brief at 6-7; Mary Jo's Brief at 3. Section 7710.2 provides that "[t]he rules of construction that apply in this Commonwealth to the provisions of testamentary trusts also apply as appropriate to the provisions of *inter vivos* trusts." 20 Pa.C.S.A. § 7710.2. One such rule of construction applicable to testamentary trusts is found at Section 2507(3).

> **§ 2507. Modification by circumstances**
>
> Wills shall be modified upon the occurrence of any of the following circumstances, among others:
>
> …
>
> **(3) Marriage.--**If the testator marries after making a will, the surviving spouse shall receive the share of the estate to which he would have been entitled had the testator died intestate, unless the will shall give him a greater share or unless it appears from the will that the will was made in contemplation of marriage to the surviving spouse.
>
> …

20 Pa.C.S.A. § 2507(3).[5]

The parties dispute whether Section 7710.2 operates to include an *inter vivos* trust into the assets distributable as an intestate share for the purposes of Section 2507. The orphans' court ruled that it does and awarded Mary Jo one-half of the value of Decedent's estate had he died intestate including the assets held in the Trust. Orphans' Court Decree, 9/12/14, at 1-2. The Kulig Children claim this was error. "By altering a statutory scheme that had developed for nearly 70 years, the Orphans' Court erroneously made new law regarding pretermitted spouses, which was neither intended by the General Assembly nor supported by the statutory provisions at issue in this appeal." Kulig Children's Brief at 12. We disagree.

In support of their position, the Kulig Children carefully outline the framework and legislative history of the portions of the PEF Code relating to *inter vivos* trusts, decedents' estates and spousal rights. Kulig Children's Brief at 20-29. Specifically, the Kulig Children cite past precedent holding that *inter vivos* trust assets are not considered part of a decedent's probate or intestate estate and were not available for distribution to a pretermitted spouse under Section 2507. **Id.** at 14, *citing* 20 Pa.C.S.A. § 2101(a); **Brown Trust**, 26 Fid. Rep. 2d 379 (O.C. Phila. 2005). They further note

---

[5] The intestacy provisions of the PEF Code provide that Mary Jo's intestate share as surviving spouse, where there are surviving issue of decedent's prior marriage, is one half of the intestate estate. **See** 20 Pa.C.S.A. § 2102.

that Section 2203 of the PEF Code establishes a right in a surviving spouse to elect a share of a decedent's probate estate and certain categories of other property passing upon decedent's death, including revocable *inter vivos* trusts. *Id.* at 22. "Probate estates, testamentary trusts, revocable *inter vivos* trusts, and irrevocable *inter vivos* trusts are different entities, and it is important to distinguish among them. [T]he General Assembly has developed clear categories of property and detailed legal structures regarding a surviving spouse's rights, if any, to each." *Id.* at 15. The Kulig Children suggest that the application of Section 7710.2 to Section 2507(3), as ruled by the orphans' court, represents a radical change to this existing and longstanding statutory scheme and fails to consider these provisions *in pari materia*. *Id.* at 30, 34. The Kulig Children maintain that Section 7710.2 does not demonstrate a sufficiently clear and unequivocal intent by the Legislature to warrant such an interpretation. *Id.* at 34.

The Kulig Children emphasize Section 7710.2's limiting phrase "as appropriate" for application of the rules of construction to *inter vivos* trusts. *Id.* at 35. The Kulig Children maintain that this limitation precludes reliance on the comments to the Section absent direct support in its text. *Id.* at 36. "Section 7710.2 applies only 'as appropriate' so the mention of Section 2507 in the comment cannot be interpreted to mean that Section 2507 is simply imposed upon *inter vivos* trusts without qualification or limitation." *Id.* The Kulig Children posit that application of Section 2507(3), construing a

decedent's intent in the event of a divorce subsequent to the signing of a will, to *inter vivos* trusts would be "appropriate" under Section 7710.2. ***Id.*** at 45-46.

The Kulig Children contrast other sections of the UTA that specifically reference sections of the PEF Code in the text of the sections as examples where they claim such legislative intent to incorporate the PEF Code provisions is clear. ***Id.*** at 36, *citing* 20 Pa.C.S.A. §§ 7755 (dealing with creditor claims), 7799.2 (dealing with accountings). The Kulig Children also contrast sections of the UTC where the comments make a clear statement that the provision constitutes a change in Pennsylvania law. ***Id.*** at 39, *citing* 20 Pa.C.S.A. § 7752(a) (addressing revocability, and including the Joint State Government Commission Comment noted, "[a]dopting the position of the UTC, subsection (a) reverses prior Pennsylvania law…"). Because of the perceived lack of clear legislative intent, and applying the "as appropriate" limiting language, the Kulig Children conclude that the comments to Section 7710.2, upon which the orphans' court relied, are insufficient to support a conclusion that the Legislature intended for *inter vivos* trusts to be subject to the rules of construction applicable to testamentary trusts relative to Section 2507(3). ***Id.*** at 51.

We conclude the orphans' court was correct to refer to the comments to Section 7710.2 to discern our Legislature's intent. ***See*** 1 Pa.C.S.A.

§ 1927. This Court has recently noted the relevance of the Uniform Law Comments to the UTA.

> Of some use is the prefatory comment to Chapter 77 of the PEF Code, which states that Chapter 77 is based upon the Uniform Trust Code ["UTC"]. 20 Pa.C.S.A., Ch. 77, Refs. & Annos. (2005). However, not all sections of the UTC were adopted into the PEF Code. *Id.* Further, several PEF Code provisions, while based upon the UTC, were substantially rewritten by our General Assembly. *Id.* Sections of the chapter that are substantially similar to their equivalent provisions contained in the UTC are indicated as such by a reference to the relevant UTC section number in the PEF Code section headings. *Id.* For these provisions, the General Assembly has indicated that "the UTC comments are applicable to the extent of similarity." *Id.*

*In re McKinney*, 67 A.3d 824, 831 (Pa. Super. 2013) (construing Section 7766(b)(4) relative to removal of a trustee). Section 7710.2 references UTC 112 in its section heading, hence the UTC comments are relevant here. Additionally, the Joint State Government Commission provided a comment with specific reference to Section 2507.

The 2005 Joint State Government Commission Comment to Section 7710.2 notes that Section 7710.2 "imports 20 Pa.C.S. §§ **2507**, 2514 and 2517 and other statutory and judicial rules of interpretation that apply to trusts under wills." 20 Pa.C.S.A. § 7710.2, cmt. (Jt. St. Govt. Comm.-2005) (emphasis added). The Uniform Law Comment pertaining to Section 7710.2 explains some of the reasons for equating rules of interpretation between *inter vivos* and testamentary trusts.

> The revocable trust is used primarily as a will substitute, with its key provision being the determination of the persons to receive the trust property upon the settlor's death. Given this functional equivalence between the revocable trust and a will, the rules for interpreting the disposition of property at death should be the same whether the individual has chosen a will or revocable trust as the individual's primary estate planning instrument. … Rules of construction can also concern assumptions as to how a donor would have revised donative documents in light of certain events occurring after execution. …

*Id.* cmt. (Uniform Law Cmt.).

Based on these comments and the plain unambiguous text of Section 7710.2, we conclude our Legislature intended the rule of construction employed to ascertain a decedent's intent in connection to a pretermitted spouse be applied to *inter vivos* trusts. The text unambiguously applies existing rules of construction employed for testamentary trusts to the interpretation of *inter vivos* trusts. **See** 20 Pa.C.S.A. § 7710.2.

The Kulig Children's emphasis on Section 2203's spousal election as the means for a spouse to receive assets from a revocable *inter vivos* trust is misplaced. In contrast to Section 2507(3), the Section 2203 spousal election provision is not a rule of construction. The former is a construction applied in the absence of contrary intent to provide for a surviving spouse based on the presumption that a decedent did not intend to omit the surviving spouse from his or her testamentary decisions. The latter is a right of a surviving spouse available notwithstanding any contrary intent of

the decedent to protect against disinheritance. In recognition of the "functional equivalency" between *inter vivos* trusts and testamentary dispositions, the Legislature in adopting Section 7710.2 merely sought to impose consistency on the construction of such instruments. Accordingly, there is little reason to treat a decedent's presumed intent differently when considering his will or his *inter vivos* trust. The fact that surviving spouses retain other rights independent of that intent is irrelevant. Therefore, it is unnecessary to read Section 7710.2 *in pari materia* with Section 2203, because they relate to different concerns. "Statutes or parts of statutes are *in pari materia* when they relate to the same persons or things or to the same class of persons or things." **Commonwealth v. Brown**, 741 A.2d 726, 733 (Pa. Super. 1999) (*en banc*), citing 1 Pa.C.S.A. § 1932, *appeal denied*, 790 A.2d 1013 (Pa. 2001).

The Kulig Children's suggestion that the 2005 Joint State Government Commission Comment to Section 7710.2, importing Section 2507, when read with the "as appropriate" language of the text should result in a selective incorporation of only certain subsections of Section 2507 is similarly misplaced. We agree with the orphans' court's following observation.

> Although [the Kulig Children] contend that it is not appropriate to apply Section 2507(3) to revocable *inter vivos* trusts, they admit that "[i]t must be appropriate for Section 2507 to apply to *inter vivos* trusts in some regard; otherwise, the comment to Section 7710.2 would be meaningless as it relates to

Section 2507." … We note that the Pennsylvania Comment references Section 2507 in its entirety. We perceive that the General Assembly intended to permit the modification of an *inter vivos* trust in the event of a pretermitted spouse and, therefore, we believe that Petitioners' claim is without merit.

Orphans' Court Opinion, 9/12/14, at 11-12 (citation omitted). Rather, we consider the "as appropriate" language to indicate that application of rules of construction should be used, as in any case, only when the express language of the underlying instrument is unclear or the intent is made unclear through intervening circumstances. "[I]t is well established that resort to the rules of statutory construction is to be made only when there is an ambiguity in the provision." ***Oliver v. City of Pittsburgh***, 11 A.3d 960, 965, (Pa. 2011) (citation omitted). The aim of Section 7710.2 is to impose uniformity in interpretation of testamentary dispositions and *inter vivos* trusts, it is not an invitation to a court to impose *ad hoc* considerations that would result in non-uniform applications.

Our review of our sister states that have enacted all or portions of the UTC, has disclosed no case directly on point. The Kulig Children cite to ***Bell v. Estate of Bell***, 181 P.3d 708 (N.M. Ct. App. 2008) in support of their position. Kulig Children's Brief at 40-41, *citing* 1 Pa.C.S.A. § 1927. In ***Bell***, without any reference or discussion of its version of UTC Section 112[6], the

---

[6] The New Mexico statute provides as follows.

### § 46A-1-112. Rules of construction

*(Footnote Continued Next Page)*

- 14 -

Court held that a pretermitted spouse's share of the decedent's assets would not include his *inter vivos* trust. **Bell**, **supra** at 716. The pretermitted spouse statutory rule of construction in Section 45-2-301 differs from our Pennsylvania provision. In New Mexico, a qualifying pretermitted spouse will receive an intestate share of the probate estate assets, only after excluding any bequest to decedent's children that are not also children of the pretermitted spouse. *Id.* at 712. The interlocutory issue before the Court in **Bell** was whether a bequest to a revocable *inter vivos* trust created to benefit decedent's children was equivalent to a direct bequest to the children when determining a pretermitted spouse's share. *Id.* at 711. The **Bell** Court held it was not. *Id.* at 712. It went on, *sua sponte*, to advise that on remand the assets already in the trust would not be included with the assets available to calculate the pretermitted spouse's share. *Id.* at 713. It did so without any reference or discussion of its version of the UTC Section 112, Section 46A-1-112. *Id.* The Kulig Children suggest that this lack of mention was a tacit recognition that the rule of construction did not apply to an *inter*

---

*(Footnote Continued)*

> The rules of construction that apply in this state to the interpretation of and disposition of property by will also apply as appropriate to the interpretation of the terms of a trust and the disposition of the trust property.

N.M. STAT. § 46A-1-112.

- 15 -

*vivos* trust when considering a deceased settlor's intent toward a pretermitted spouse. Kulig Children's Brief at 43.

We conclude that **Bell** is unpersuasive. We again agree with the orphans' court's observations. "Unlike enactments of the UTC in other jurisdictions such as New Mexico, our iteration of the rules of construction includes a directive from the General Assembly to import protections to pretermitted spouses. **Compare**, 20 PA.C.S. § 7710.2 **with** N.M. STAT. § 46A-1-112." Orphans' Court Opinion, 9/12/14, at 11.

In sum, we conclude that the plain language of Section 7710.2, consistent with the legislative comments appended thereto, reveals the intention of the Legislature to make rules of construction consistent whether interpreting testamentary dispositions or *inter vivos* trusts. **See Taylor**, **supra**. The use of such rules will occur only "as appropriate," as when there exists an ambiguity in an instrument's terms or in a decedent's intent. **See Oliver**, **supra.** In the instant case, an ambiguity relative to Decedent's intent arose relative to his surviving pretermitted spouse. Accordingly, we conclude the orphans' court did not err by applying Section 2507(3) to Decedent/Settlor's will and Trust, as directed by Section 7710.2. We therefore affirm the orphans' court's September 12, 2014 decree.[7]

---

[7] Whether the result achieved by this decision is just under the facts of this case, where the surviving spouse receives approximately $120,000.00 for each day of her marriage to Decedent is not for us to opine. The Legislature is free to revisit and refine its clear directive as it sees fit. Further, we
*(Footnote Continued Next Page)*

- 16 -

Decree Affirmed.

Judge Donohue joins the opinion.

Justice Fitzgerald concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 12/24/2015

---

*(Footnote Continued)*
express no opinion relative to the effect of Section 7710.2 on irrevocable *inter vivos* trusts.