**Certiorari Denied, March 7, 2014, No. 34,451**

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number:  2014-NMCA-031**

**Filing Date:  November 20, 2013**

**Docket No. 31,990**

**LONNIE CURRY, and**
**MILDRED CURRY, for themselves**
**and all other similarly situated,**

      **Plaintiffs-Appellees,**

**v.**

**GREAT NORTHWEST**
**INSURANCE COMPANY, a foreign**
**Corporation, J. S. WARD & SON,**
**INC. A New Mexico Corporation,**
**DEAN CHAVEZ, JOHN DOE**
**ADJUSTERS and AGENTS of**
**GREAT NORTHWEST**
**INSURANCE COMPANY and**
**J. S. WARD & SON, INC.,**

      **Defendants-Appellants.**

**APPEAL FROM THE DISTRICT COURT OF VALENCIA COUNTY**
**John W. Pope, District Judge**

The Rowe Law Firm, P.C.
Gordon H. Rowe, III
Albuquerque, NM

for Appellees
McClaugherty & Silver, P.C.
Joe L. McClaugherty
Santa Fe, NM

for Appellants

**OPINION**

**ZAMORA, Judge.**

**{1}** This case presents us with the limited question of whether our Supreme Court's decision in *Jordan v. Allstate Insurance Co.*, 2010-NMSC-051, 149 N.M. 162, 245 P.3d 1214, requires that uninsured and underinsured motorist (UM/UIM) coverage options and corresponding premiums appear on the written UM/UIM coverage rejection form itself. Unpersuaded that *Jordan* creates such a specific requirement, we conclude that Plaintiffs' complaint is based upon an incorrect reading of *Jordan,* thereby failing to state a claim upon which relief could be granted. We reverse the district court's decision denying Defendants' motion to dismiss as to that issue and remand for proceedings consistent with this Opinion.

**I.     BACKGROUND**

**{2}** We take the relevant facts from the allegations of the complaint filed by Lonnie Curry and Mildred Curry (Plaintiffs) for themselves and on behalf of others similarly situated. We accept these facts as true for purposes of reviewing a motion to dismiss. *Padilla v. Wall Colmonoy Corp.*, 2006-NMCA-137, ¶ 2, 140 N.M. 630, 145 P.3d 110. A motion to dismiss tests the legal sufficiency of the complaint, not the facts that support it. *See* Rule 1-012(B)(6) NMRA; *Three Rivers Land Co. v. Maddoux*, 1982-NMSC-111, ¶ 13, 98 N.M. 690, 652 P.2d 240, *overruled on other grounds by Universal Life Church v. Coxon*, 1986-NMSC-086, 105 N.M. 57, 728 P.2d 467.

**{3}** In September 2009, Plaintiffs were involved in a serious motor vehicle accident. Plaintiffs' vehicle was covered by a standard insurance policy with Great Northwest Insurance Company (Defendant)[1], which provided liability coverage for their vehicle. Because coverage from the underlying liability carriers was insufficient to compensate for all of their injuries, Plaintiffs filed an underinsured motorist claim with Defendant. Defendant denied Plaintiffs' underinsured motorist claim based on a written rejection of UM/UIM coverage Plaintiffs signed when they purchased their policy.

**{4}** Plaintiffs filed suit alleging that the UM/UIM coverage rejection form Defendant relied upon in denying their uninsured motorist claim was invalid under *Jordan* because it did not contain a list of premium charges corresponding to the available UM/UIM coverage options. Plaintiffs also asserted that because the UM/UIM coverage rejection form was invalid, their policy should be reformed as a matter of law by providing UM/UIM coverage

---

[1]All named Defendants filed the motion to dismiss. The specific issue before this Court is limited to the insurance policy and rejection form issued by the Defendant Great Northwest Insurance Company. Any reference to the singular Defendant shall be to Defendant Great Northwest Insurance Company and any reference to the plural Defendants shall be to all named Defendants.

equal to their limits of liability.

**{5}** In response to Plaintiffs' suit, Defendants moved for dismissal claiming that Plaintiffs misconstrued *Jordan* and as a result failed to state a claim upon which relief could be granted. Defendants argued that *Jordan* requires insurers to provide UM/UIM coverage options and corresponding premium information, but that it does not require that the information also appear directly on the written rejection of UM/UIM coverage.

**{6}** The claims in Plaintiffs' complaint are limited to the rejection form. Aside from the rejection form issue, none of the parties raised an issue of whether the UM/UIM coverage and corresponding premiums were provided in writing when the insurance policy was being considered. Therefore, we limit our decision to the issue of whether New Mexico law requires that an insurer provide available UM/UIM coverage options and corresponding premium information on the written rejection form delivered with the insurance policy to the insured.

**{7}** After hearing the parties' arguments, the district court denied Defendants' motion to dismiss. In its order, the court found that although *Jordan* did not directly address the issue of whether a valid waiver or rejection of UM/UIM coverage requires that the insured be provided a written list of coverage options and corresponding premium charges on the rejection form itself, an argument could be made that *Jordan* created such a requirement. The court therefore certified this specific question for interlocutory appeal. This Court granted the request for an interlocutory appeal pursuant to NMSA 1978, Section 39-3-4 (1999) and Rule 12-203(A) NMRA.[2]

**{8}** Although we are not confined to the particular questions the district court certified for this interlocutory appeal, the scope of our review must be limited to the issues fairly contained in the order. *Pena Blanca P'ship v. San Jose de Hernandez Cmty. Ditch*, 2009-NMCA-016, ¶ 7, 145 N.M. 555, 202 P.3d 814. This Court has declined to decide issues that were not the basis of the order actually appealed from. *See Bell v. Estate of Bell*, 2008-NMCA-045, ¶ 9, 143 N.M. 716, 181 P.3d 708 (declining to address an issue that was neither the basis of the district court's order nor specifically certified for interlocutory appeal); *see also Ellis v. Cigna Prop. & Cas. Cos.*, 2007-NMCA-123, ¶ 14, 142 N.M. 497, 167 P.3d 945 (concluding that the issues raised by appellant were not certified for interlocutory appeal by the district court); *cf. Armijo v. Wal-Mart Stores, Inc.*, 2007-NMCA-120, ¶ 19, 142 N.M. 557, 168 P.3d 129 (stating an appellate court can decide issues other than those certified,

---

[2]Aside from the question certified for interlocutory appeal, Defendants' motion to dismiss also claimed that (1) the court lacked personal jurisdiction over Dean Chavez, (the adjuster who denied Plaintiffs' claim and who was named in the complaint individually), and (2) Plaintiffs failed to identify an ascertainable class. Therefore, the district court's order denying the motion to dismiss was not solely based on the question before this Court in this appeal.

where a party raises issues which were not stated in the questions certified, but were not wholly unrelated to the issues identified by the lower court in its order). The argument before the district court by both parties, the district court's order, and the question before this Court is limited to the question of whether a valid waiver or rejection of UM/UIM coverage requires that the insured be provided a written list of coverage options and corresponding premium charges on the rejection form itself.

## II.    DISCUSSION

### A.    Standard of Review

{9}    The decision of the district court to deny Defendants' Rule 1-012(B)(6) motion is a question of law that we review de novo. *Valles v. Silverman*, 2004-NMCA-019, ¶ 6, 135 N.M. 91, 84 P.3d 1056. De novo review requires appellate courts "to make an independent assessment of the record." *Aken v. Plains Elec. Generation & Transmission Coop., Inc.*, 2002-NMSC-021, ¶ 19, 132 N.M. 401, 49 P.3d 662.

### B.    UM/UIM Rejections in New Mexico

{10}    NMSA 1978, Section 66-5-301 (1983) and its implementing regulation, now codified as 13.12.3.9 NMAC (5/14/2004), govern UM/UIM insurance coverage in New Mexico. *Jordan*, 2010-NMSC-051, ¶¶ 16-18. The New Mexico Supreme Court construes the statute liberally, and the default rule is to provide the maximum possible amount of UM/UIM coverage. *Id.* ¶15. Any exception to that rule is strictly construed to protect the insured. *Id.* Section 66-5-301 embodies a public policy of New Mexico that UM/UIM coverage be provided with every automobile liability insurance policy issued in this state. *Romero v. Dairyland Ins. Co.*, 1990-NMSC-111, ¶ 6, 111 N.M. 154, 803 P.2d 243. For that reason, "the insurer may not exclude UM/UIM coverage from an automobile liability policy unless it has offered it to the insured, and the insured has exercised the right to reject the coverage through some positive act." *Marckstadt v. Lockheed Martin Corp.*, 2010-NMSC-001, ¶ 15, 147 N.M. 678, 228 P.3d 462 (citation omitted).

{11}    Section 66-5-301 provides insureds the right to reject UM/UIM coverage. It does not specify the form or manner that an effective rejection must take. *Romero*, 1990-NMSC-111, ¶ 4. The form and manner of effective UM/UIM coverage rejections are established by rules and regulations promulgated by the superintendent of insurance. *Kaiser v. DeCarrera*, 1996-NMSC-050, ¶ 8, 122 N.M. 221, 923 P.2d 588. Regulation 13.12.3.9 NMAC requires rejections of UM/UIM coverage to be written and included in the policy delivered to the insured. *Marckstadt*, 2010-NMSC-001, ¶ 17. This "furthers [the] legislative purpose to provide for the inclusion of uninsured motorist coverage in every automobile liability policy unless the insured has knowingly and intelligently waived such coverage." *Romero*, 1990-NMSC-111, ¶ 9. Any insured rejecting UM/UIM coverage should be well informed as to that decision. *Id.* The rejection, as part of the delivered policy, provides affirmative evidence of the extent of coverage. *Id.* This affirmative evidence "comports with [the] policy that any

4

rejection of the coverage be knowingly and intelligently made." *Id.*

**C.**     ***Jordan* Does Not Require UM/UIM Coverage Options and Corresponding Premium Charges to Be Provided on the Written Rejection Form Itself**

**{12}**     In *Jordan*, the New Mexico Supreme Court recognized that insurers were offering UM/UIM coverage in ways that did not allow insureds to make realistically informed choices. 2010-NMSC-051, ¶ 20. After examining Section 66-5-301, the corresponding regulation 13.12.3.9 NMAC, and related case law, the Court endeavored to set forth workable requirements for valid, meaningful rejections of UM/UIM coverage. *Jordan*, 2010-NMSC-051, ¶¶ 20-21. The *Jordan* Court determined that UM/UIM coverage equal to the liability limits would be the default coverage unless the insurer:

> (1) offer[s] the insured UM/UIM coverage equal to his or her liability limits, (2) inform[s] the insured about premium costs corresponding to the available levels of coverage, (3) obtain[s] a written rejection of UM/UIM coverage equal to the liability limits, and (4) incorporate[s] that rejection into the policy [delivered to the insured] in a way that affords the insured a fair opportunity to reconsider the decision to reject[.]

*Id.* ¶¶ 22, 30.

**{13}**     Plaintiffs argue that when read together, the requirement that insurers provide coverage and premium information and the requirement that rejections be in writing, create an implicit requirement that the coverage and premium information be provided on the written rejection form itself. We disagree.

**{14}**     In *Jordan*, the Court explained to effectuate New Mexico's public policy of protecting insureds, an insured's decision to reject UM/UIM coverage must be knowing and intelligent. *Id.* ¶ 20. To ensure that rejections are knowingly and intelligently made, insurers must offer UM/UIM coverage in a meaningful way and obtain any rejections of the statutorily authorized coverage in writing. *Id.* ¶ 18. Offering UM/UIM coverage in a meaningful way includes providing the insured with a menu of coverage options and corresponding premium costs. *Id.* ¶ 21. Providing this information and obtaining written rejections enables the insured to make an informed decision about the level of UM/UIM coverage he or she wants to purchase and minimizes uncertainty (and litigation) with regard to the coverage that the insured has obtained. *Id.*; *see also Romero*, 1990-NMSC-111, ¶ 9 (including an insured's rejection with their delivered policy ensures that the insured has affirmative evidence of the extent of their coverage).

**{15}**     The *Jordan* Court's discussion is articulated in terms of information made available to the prospective insured prior to purchasing liability and UM/UIM coverage. In setting out the workable requirements for valid, meaningful rejections of UM/UIM coverage, *Jordan* used the term "provide" when discussing coverage and premium information. *Jordan*, 2010-

NMSC-051, ¶ 21. The *Jordan* Court also noted that by providing a menu of coverage options and corresponding premiums, insureds can make an informed decision on the type of UM/UIM coverage they would like to purchase. *Id.*

**{16}** The cases leading up to *Jordan* also address the requisite UM/UIM information issue within the context of purchasing an insurance policy. *See Romero*, 1990-NMSC-111, ¶ 4 (finding that the rejection form specified that the insured's policy would not contain coverage when issued and said rejection form was not attached to the liability policy that was later issued); *Marckstadt*, 2010-NMSC-001, ¶ 4 (holding that an insurer must get a written rejection of UM/UIM coverage before it can exclude it from the insurance policy); *Progressive Nw. Ins. Co. v. Weed Warrior Servs.*, 2010-NMSC-050, ¶ 1, 149 N.M. 157, 245 P.3d 1209 (holding that an election by an insured to purchase UM/UIM coverage in an amount less than the policy liability limits constitutes a rejection of maximum amount of UM/UIM coverage). Additionally, Section 66-5-301 presents in terms of issuing an insurance policy and 13.12.3.9 NMAC, which references the statute, requires that the rejection of UM/UIM coverage be made a part of the issued insurance policy.

**{17}** When discussing the rejection forms, the *Jordan* Court used the word "written." 2010-NMSC-051, ¶ 22. Indeed, the Court's entire discussion of UM/UIM rejection forms centered around the importance of obtaining UM/UIM rejections in writing. *Id.* ¶¶ 16-19. In contrast, the Court's discussion of providing coverage and premium information focused primarily on the need to provide insureds with enough information to make an informed decision regarding UM/UIM coverage in contemplation of purchasing their insurance policy. *Id.* ¶¶ 20-21. The Court did not address every method insurers may use to provide this information or the validity of those methods. We conclude that *Jordan* does not require UM/UIM coverage options and corresponding premium information to appear on the written UM/UIM rejection form included with an insured's policy.

**{18}** *Jordan* decided three consolidated cases: *Jordan v. Allstate*, *Romero v. Progressive Northwestern Insurance Co.*, and *Lucero v. Trujillo*. *Jordan*, 2010-NMSC-051, ¶ 3. Our Supreme Court decided to consolidate the three cases and resolve them with a single opinion in order to provide guidance on the requirements for valid offers and rejections of UM/UIM coverage. *Id.* ¶ 13. After the Court prescribed the four requirements, it discussed the application of those requirements to each of the three cases.

**1.** *Jordan v. Allstate*

**{19}** Plaintiffs argue that the facts in *Jordan* are virtually identical to the facts in the case before us. We disagree. It is necessary to point out in *Jordan*, the insured was provided with a combination UM/UIM selection/rejection form. While the *Jordan* Court did not address this particular type of form, it did find that the selection/rejection form included a menu of coverage options from the statutory minimum up to policy liability limits. *Id.* ¶ 31. However, the Court held that the rejections were insufficient, both because the insurer did not provide the premium costs for each coverage option on this selection/rejection form, and because the

6

rejections were not part of the policies delivered to the insureds. *Id.* ¶ 32. Plaintiffs argue this holding demonstrates the Court's intention that written UM/UIM rejection forms include UM/UIM coverage options and premium costs.

**{20}**    We disagree for two reasons. First, in *Jordan*, the rejections were insufficient as a matter of law because the rejections were not made part of the policies delivered to the insureds. The insurer did not disagree that the forms were not attached to the policies, but instead argued that the signed forms showed that the insureds knowingly and intelligently elected to purchase the minimum UM/UIM coverage limits. This argument completely ignored the requirements of 13.12.3.9 NMAC. While the declaration pages sent to the insureds listed the amounts of liability and UM/UIM coverages provided by the policies, "the pages did not contain specific references to [the insureds'] rejection of UM/UIM coverage" equal to the policies' liability limits. *Jordan*, 2010-NMSC-051, ¶ 32 (internal quotation marks and citation omitted). Contrary to the argument of Plaintiffs, the *Jordan* Court did not hold that the rejection failed as a matter of law because the insurer did not provide UM/UIM coverage options and premium pricing on the selection/rejection form, specifically. Instead the rejections failed because the insurer failed to provide the rejections as part of the policies delivered to the insureds. *Id.* Second, Plaintiffs' interpretation of the Court's holding in *Jordan* is inconsistent with the Court's holdings in the other consolidated cases.

## 2.    *Romero v. Progressive*

**{21}**    In *Romero*, there was no evidence in the record to show: (1) the insurer offered the insured UM/UIM coverage equal to his liability limits; (2) the insured was informed of UM/UIM coverage costs; or (3) the insured rejected the coverage in writing. *Jordan*, 2010-NMSC-051, ¶ 33. Again, the declaration page listed the amount of liability and UM/UIM coverage in the policy, but did not expressly indicate that the higher levels of UM/UIM coverage had been rejected. *Id.* The Court therefore found none of the requirements for a valid rejection of UM/UIM coverage were met.

## 3.    *Lucero v. Trujillo*

**{22}**    When applying its UM/UIM coverage rejection requirements to the last of the three consolidated cases, the *Lucero* Court held that the rejection of coverage was invalid. *Id.* ¶ 34. The list of UM/UIM coverage options and premiums provided in pull-down menus on the insurer's website were acceptable. *Id*. The Court went on to say that the provision of price quotations for UM/UIM coverage and premiums on the insurer's website was not only sufficient to satisfy the requirement, but was a "commendable system of offering meaningful choices to its insureds." *Id. ¶¶* 34, 35. However, the Court concluded that the failure to make the insured's rejection part of the policy fell short of full compliance with the law. *Id.* ¶ 35; *see* 13.12.3.9 NMAC. It reached this conclusion because there was nothing in the plaintiff's application, declaration page, or policy to show she rejected policy limit UM/UIM coverage that would allow her to go back and review her decision. *Jordan*, 2010-NMSC-051, ¶ 35.

The Court held that, in contemplation of purchasing an insurance policy, an insured must be provided with a list of available UM/UIM coverage options and corresponding premiums in order to review their options and select their preferred type of coverage. Any rejections of options are confirmation of what insureds have selected and what insureds have not selected. This information and documentation provided to insureds enables them to review their decision to accept or reject UM/UIM coverage, at their convenience, if necessary.

**{23}** The dissent suggests that the only meaningful way for insureds to review their decision is to have the coverage options and corresponding premiums surrounding their rejection presented to them when the policy is delivered. This suggestion assumes that the listed options and premiums offered, though not selected, will remain the same throughout the duration of the policy. It also assumes that a menu of options and costs on the rejection form is the only means of re-evaluating any decision to obtain UM/UIM coverage in an amount less than one's liability insurance. In contemplation of purchasing an insurance policy, insureds are provided with a list of options and premiums in order to decide what type of UM/UIM coverage they would like to purchase, if any. Additionally, in this day and age, access to UM/UIM information can be requested from an insurer through its website at any time and at the insureds' convenience. Traditionally, the insured can always contact the insurance agent from whom they purchased the policy. Notably in *Lucero*, for our purposes, this required information was provided on the insured's website and not as part of the rejection form. Also, the Court approved of the insured's provisions of the required information.

**{24}** The holdings in *Jordan*, *Romero*, and *Lucero*, read together, make clear that insurers must provide UM/UIM coverage and premium information in a way that allows the insured to make an informed decision about the coverage purchased or rejected, in a knowing and intelligent manner. However, they do not prescribe any one particular way the information must be provided. The *Jordan* Court intended to require insurers to fully inform their insureds regarding UM/UIM coverage options and corresponding premium costs but it did not set forth the requirement that such information be provided on the written rejection form itself. Therefore, Plaintiffs have failed to state a claim upon which relief may be granted.

**D.      Rules of Statutory Construction and Rules of Interpretation of Insurance Regulations Are Not Applicable to Interpretation of Precedent**

**{25}** In interpreting New Mexico's uninsured motorist statute, *Jordan* recognized that the New Mexico Supreme Court has consistently interpreted Section 66-5-301 and its implementing regulation, 13.12.3.9 NMAC, liberally, holding that the provision of the maximum possible amount of UM/UIM coverage in every insurance policy is the default rule. *Jordan*, 2010-NMSC-051, ¶ 15. "[A]ny exception to that rule must be construed strictly to protect the insured." *Id.* (internal quotation marks and citation omitted).

**{26}** Plaintiffs present the argument that this Court should interpret *Jordan* using the same statutory construction principles *Jordan* itself used to interpret Section 66-5-301, thereby

interpreting the case strictly and in favor of the insured. We are not persuaded.

**{27}** Statutes are generally applicable and principles of statutory construction exist to enable the application of statutes to specific sets of facts in each case. *Key v. Chrysler Motors Corp.*, 1996-NMSC-038, ¶ 13, 121 N.M. 764, 918 P.2d 350 (stating that we seek to give effect to the Legislature's intent when interpreting statutes). On the other hand, our approach to interpreting precedent is governed by the principle of stare decisis. *Trujillo v. City of Albuquerque*, 1998-NMSC-031, ¶ 33, 125 N.M. 721, 965 P.2d 305 ("Stare decisis is the judicial obligation to follow precedent, and it lies at the very core of the judicial process of interpreting and announcing law.").

**{28}** Plaintiffs do not cite any authority for the proposition that this Court should apply principles of statutory construction to our interpretation of precedent, and we have found none. Where a party cites no authority to support an argument, we may assume no such authority exists. *In re Adoption of Doe*, 1984-NMSC-024, ¶ 2, 100 N.M. 764, 676 P.2d 1329. Therefore, we decline to depart from well-established jurisprudence and apply principles of statutory construction to our interpretation of the *Jordan* decision.

**E.      *Jordan's* Discussion of *Montano* Does Not Provide Guidance in Our Decision in This Case**

**{29}** Lastly, Plaintiffs argue that *Jordan's* discussion of *Montano v. Allstate Indemnity Co.*, 2004-NMSC-020, 135 N.M. 681, 92 P.3d 1255, demonstrates the Court's intention to require UM/UIM coverage options or premiums to be provided in writing. Plaintiffs are correct that our Supreme Court held that an insurance company must provide the insured with the premium costs for each level of available stacked coverage and obtain a written rejection of stacking automobile insurance policy coverages in order to limit the insured liability based on an anti-stacking provision. *Id.* ¶¶ 19-20. However, the narrow question before this Court is whether *Jordan* requires UM/UIM coverage options or premiums to be *on the written UM/UIM coverage rejection form itself*. The only guidance *Montano* does provide is that a written rejection provides an insured with the exact coverage they have chosen. Yet, it does not provide any guidance in answering the specific question before us.

**III.      CONCLUSION**

**{30}** We conclude that the *Jordan* Court intended to require insurers to fully inform insureds regarding available UM/UIM coverage options and corresponding premium costs when purchasing or renewing a policy, but that it did not set forth the requirement that such information be provided on the written rejection form delivered with the purchased policy. We reverse the district court's denial of Defendants' motion to dismiss as to that issue, and remand for further proceedings consistent with this Opinion.

**{31}      IT IS SO ORDERED.**

9

_____
M. MONICA ZAMORA, Judge

**I CONCUR:**

_____
**JAMES J. WECHSLER, Judge**

**CYNTHIA A. FRY, Judge (dissenting).**

**FRY, Judge (dissenting).**

**{32}** I respectfully dissent. In my view, the line of Supreme Court cases addressing the acceptable method of rejecting full UM/UIM coverage, culminating in *Jordan*, compels the conclusion that information regarding UM/UIM coverages and corresponding premiums must be listed in the policy—not necessarily in the rejection form—provided to the insured. Our Supreme Court in *Jordan* made it clear that one of the four prerequisites to valid rejection of full UM/UIM coverage is that the insurer "inform the insured about premium costs corresponding to the available levels of coverage." 2010-NMSC-051, ¶ 22. The question presented by the present case is how that information must be conveyed to the insured. The Majority limits its discussion to whether this information must be provided on the written rejection form and concludes that providing this information prior to the purchase of insurance was sufficient for purposes of validly rejecting UM/UIM coverage equal to the limits of liability coverage. Majority Opinion ¶¶ 6, 30.

**{33}** I have two primary disagreements with the Majority's approach in this case. First, I do not agree with the Majority's conclusion that providing a UM/UIM coverage/premium menu at any time prior to the insured's rejection of maximum available coverage constitutes compliance with *Jordan*'s requirements. I think *Jordan* requires the insurer to provide this menu with the policy at the same time it transmits the insured's written rejection. Second, I do not agree that we should limit our analysis to the question of whether the coverage/premium menu must be part of the insured's written rejection form. Under our notice pleading standard, Plaintiffs' complaint sufficiently alerted Defendant to their claim that the absence of a coverage/premium menu from the delivered policy established an invalid waiver of UM/UIM coverage.

**The Manner in Which UM/UIM Coverages and Premiums Must Be Disclosed**

**{34}** Based on its limited view of Plaintiffs' complaint, the Majority concludes that Plaintiffs validly rejected UM/UIM coverage equal to the limits of their liability coverage. The question as the Majority frames it is whether the menu of UM/UIM coverages and corresponding premiums had to be provided in the written form rejecting UM/UIM coverage equal to the policy's liability coverage. The Majority states that *Jordan* did not "prescribe any one particular way the information must be provided." Majority Opinion ¶ 24. And, in

10

its discussion of the *Lucero* case that was consolidated with *Jordan*, the Majority appears to determine that pull-down menus on an insurer's website, which were accessed by the insured prior to her purchase of UM/UIM coverage, "were acceptable." Majority Opinion ¶ 22. Thus, in the Majority's view, if an insurer provides a coverage/premium menu at any time prior to the purchase of UM/UIM coverage, one of the four prerequisites to valid rejection of maximum coverage is satisfied.

**{35}** My difficulty with the Majority's view stems from the message I glean from *Jordan* and the line of UM/UIM cases preceding *Jordan*. I believe the Supreme Court has made it clear that an insurer must provide an insured the opportunity to reconsider his or her rejection of maximum available UM/UIM coverage *after* the policy is delivered. The only meaningful way to allow reconsideration is to present the insured with all of the pertinent information surrounding rejection when the policy is delivered, and this includes a list of UM/UIM coverages and corresponding premiums.

**{36}** That the coverages and premiums must be provided as part of the policy is apparent from the Court's discussion in *Jordan*. The Court consistently referred to the need to "[i]ncorporat[e] the rejection into the policy [in order to] keep[] the insured well-informed about the decision to reject coverage *and [to] allow[] the insured to reconsider his or her rejection* after further reflection, consultation with other individuals, or after merely having an opportunity to review one's policy at home." *Jordan*, 2010-NMSC-051, ¶ 18 (emphasis added) (internal quotation marks and citation omitted). More significantly, the Court stated that "[p]roviding the insured with a menu of coverage options and corresponding premium costs will enable the insured to make an informed decision about the level of UM/UIM coverage he or she wants to purchase." *Id.* ¶ 21. It is hard to understand how an insured could meaningfully reconsider his or her rejection of UM/UIM coverage if the menu of coverages and premiums is not included in the policy. Cost is obviously an important part of the insured's decision to reject. *See id.* ¶ 22 (stating that rejection is ineffective unless the insurer "incorporate[s] that rejection into the policy in a way that affords the insured a fair opportunity to reconsider the decision to reject"). And it seems clear that the Supreme Court anticipated that this menu would be part of the policy when it stated, "By requiring insurance carriers to list premium costs corresponding to each available UM/UIM coverage level, we are *providing specific guidance concerning the form and manner that valid offers and rejections of UM/UIM insurance must take* to comply with controlling statutory and regulatory provisions." *Id.* ¶ 25 (emphasis added).

**{37}** I am also not persuaded by the Majority's view that requiring the policy to include UM/UIM coverage and premium options is inconsistent with the *Jordan* Court's holdings in the other consolidated cases addressed in *Jordan*. Majority Opinion ¶ 19. Nothing in the *Jordan* Court's discussion about the Romero or Lucero policies contradicts a requirement for including these options in the policy. Instead, the Court simply noted that neither policy satisfied the requirements for a valid rejection for a variety of reasons. In addition, I do not agree that the Court concluded that the pull-down menus in the Lucero situation were "sufficient to satisfy the requirement." Majority Opinion ¶ 22. The *Jordan* Court stated that

11

"[d]espite [the insurer's] commendable system of offering meaningful choices to its insureds, *full compliance with the requirements of the law was not achieved* because the rejection was never made a part of Diana Lucero's written policy." 2010-NMSC-051, ¶ 35 (emphasis added). I do not read this as stating that the only missing requirement was inclusion of Lucero's written rejection as part of the policy. Instead, I read it as stating that a valid rejection must be made part of the policy *and* that the policy must "provide[ the insured] evidence of her rejection for later reference or reflection." *Id.* I do not see how the insured could meaningfully reflect about rejection without being provided with a menu of coverages and premiums. Such reflection would be made in a vacuum if the menu were not available for the insured to consult.

**{38}**   All of this is not to say that the menu of UM/UIM coverages and premiums must be part of the rejection form itself. Instead, I think *Jordan* tells us that the menu must be provided in the policy along with the rejection form in order to give the insured a chance to reconsider the rejection. This brings me to my second disagreement with the Majority.

**The Complaint's Claims Are Not Limited to Deficiencies in the Rejection Form**

**{39}**   I further disagree with the Majority's conclusion that we should read Plaintiffs' complaint as asserting only the specific claim that UM/UIM coverage/premium information must be included *in the rejection form*. Majority Opinion ¶ 6. New Mexico adheres to the principles of notice pleading, which require "only that the plaintiff allege facts sufficient to put the defendant on notice of his claims." *Madrid v. Village of Chama*, 2012-NMCA-071, ¶ 17, 283 P.3d 871. The complaint in this case provided adequate notice of Plaintiffs' claims. The complaint alleged:

> A rejection of UM/UIM coverage equal to the liability limits in an automobile insurance policy must be made in writing and must be made part of the insurance policy that is delivered to the insured. . . . In order to honor these requirements effectively, insurers must provide the insured with the premium charges corresponding to each available option for UM/UIM coverage so that the insured can make a knowing and intelligent decision to receive or reject the full amount of coverage to which the insured is statutorily entitled.

While other paragraphs in the complaint contained allegations suggesting that the coverage waiver itself must contain the coverage/premium information, I think the overall thrust of the complaint sufficed to inform Defendant that Plaintiffs claimed they should have been provided this information when they were provided with their rejection form as part of their policy.

**{40}**   In the context of a motion to dismiss for failure to state a claim, our case law does not require a plaintiff in his or her complaint to use specific language or to establish the likelihood of success on the merits. *See Madrid*, 2012-NMCA-071, ¶ 17 (explaining that

12

"our appellate courts have never required trial courts to consider the merits of a plaintiff's allegations when deciding a motion to dismiss, and we see no justification for requiring such technical forms of pleadings now"). Instead, in considering a motion to dismiss under Rule 1-012(B)(6), a court tests "the legal sufficiency of the complaint, not the factual allegations of the pleadings which, for purposes of ruling on the motion, the court must accept as true." *Herrera v. Quality Pontiac*, 2003-NMSC-018, ¶ 2, 134 N.M. 43, 73 P.3d 181 (internal quotation marks and citation omitted). "Dismissal under Rule 1-012(B)(6) is appropriate only if the non-moving party is not entitled to recover under any theory of the facts alleged in their complaint." *Madrid*, 2012-NMCA-071, ¶ 18 (internal quotation marks and citation omitted). The court "resolve[s] all doubts in favor of sufficiency of the complaint." *Id.* (internal quotation marks and citation omitted). "The purpose of our rule is to test the law of the claim, not the facts that support it." *Id.* (internal quotation marks and citation omitted).

**{41}** Plaintiffs' complaint provided notice that the UM/UIM coverage/premium menu was not provided in a way meaningful to an intelligent rejection of maximum available UM/UMI coverage. One meaningful way to provide the information is to include it in the policy. We do not know if the policy provided this information because the policy is not in the record, and there is nothing else in the record shedding light on the matter. As a result, whether the policy provided this information is a matter for proof introduced in the district court, not a matter for determination in the context of a Rule 1-012(B)(6) motion.

**{42}** Given my analysis of the holdings in *Jordan*, Plaintiffs' complaint states a claim supportable by the law. That claim is that Defendant was required and failed to provide Plaintiffs information on UM/UIM coverages and premiums at the same time that it provided them with the written rejection form in order to establish that Plaintiffs had validly rejected UM/UIM coverage equal to their liability coverage. In my view, the district court erroneously dismissed Plaintiffs' legally supportable claim, and its judgment should be reversed. If, on remand, Defendant can prove that it provided the coverage/premium menu with the policy and the rejection form, then Defendant should prevail on the merits. Because the Majority disagrees, I respectfully dissent.

_____
**CYNTHIA A. FRY, Judge**

**Topic Index for *Curry v. Great Nw. Ins. Co.*, No. 31,990**

**APPEAL AND ERROR**
Interlocutory Appeal

**CIVIL PROCEDURE**
Failure to State a Claim
Stare Decisis

**INSURANCE**
Motor Vehicle Insurance
Uninsured or Underinsured motorist

**STATUTES**
Rules of Construction