This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

No. A-1-CA-36973

**MORA FEDERATION OF SCHOOL EMPLOYEES, AFT NEW MEXICO,**

Petitioner-Appellee,

v.

**BOARD OF EDUCATION FOR THE MORA INDEPENDENT SCHOOLS,**

Respondent-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Alan M. Malott, District Judge**

Youtz & Valdez, P.C.
Shane C. Youtz
Stephen Curtice
James A. Montalbano
Albuquerque, NM

for Appellee

Cuddy & McCarthy, LLP
Andrew M. Sanchez
Laura E. Sanchez-Rivét
Laura M. Castille
Albuquerque, NM

for Appellant

## MEMORANDUM OPINION

**VARGAS, Judge.**

**{1}** The Board of Education for the Mora Independent Schools (the Board) appeals the district court's confirmation of an arbitration award (the Award), which found that the Mora Independent Schools (the District) terminated three of its former employees, Lisa Yescas, Paulyette Perea, and Edwina Romero (collectively, the Employees), without just cause. On appeal, the Board presents three issues for review. First, the Board contends that the district court applied the incorrect standard of review for the arbitrator's decision. Second, the Board argues that the district court failed to perform a "meaningful review" of the arbitrator's decision. Third, the Board claims the district court should have vacated the Award on grounds the arbitrator exceeded his powers and engaged in misconduct and evident partiality. Finding no error by the district court, we affirm.

**BACKGROUND**

**{2}** This case arises from grievances filed by the Employees alleging they were terminated without just cause in August 2016. In May 2016 the District sent the Employees written notices of re-employment, which the Employees timely accepted.[1] Classes for the 2016-2017 school year were scheduled to begin on August 15, 2016. On August 10, 2016, the Employees reported for orientation and were provided written contracts to sign. The arbitrator received contradictory evidence about whether the superintendent informed all District employees at orientation that they needed to immediately sign the contracts and that any "discrepancies" would be dealt with later on, or whether the superintendent did not then set a deadline to sign the contracts but instead told the Employees only that they should speak with her or human resources to discuss any discrepancies in the contracts. After noticing discrepancies in the written contracts, Yescas and Perea attempted to meet and speak with the administration to make corrections. The Employees did not sign their contracts at orientation.

**{3}** After the Employees returned to work on August 11, 2016, Yescas and Perea left early because Yescas was involved in a "medical emergency" and Perea was given verbal permission to accompany Yescas to the hospital. By the end of the day, at 3:15 p.m., the Employees had still not signed their contracts. Approximately one hour later, the superintendent sent an email to the Employees' email addresses, explaining that their failure to sign and return the contracts by 8:00 a.m. on August 12, 2016, would be construed as an "affirmative rejection" of employment with the District.[2]

**{4}** Around noon on August 12, 2016, the superintendent, having not received signed contracts from the Employees, notified Perea and Romero that their failure to return a signed contract was deemed an affirmative rejection of employment, and that they must, therefore, leave District property. Notwithstanding Romero's subsequent signing of the contract, she was still asked to leave. Yescas, who had taken sick leave for the day,

---

1Pursuant to NMSA 1978, Section 22-10A-23(B) (2003, amended 2019), "[d]elivery of the written acceptance of re[-]employment by a certified school instructor creates a binding employment contract . . . until the parties enter into a formal written employment contract."

2We note that upon review of the incomplete transcript of the arbitration hearing provided on appeal, we are unable to confirm whether the Employees received the superintendent's email.

received notice that she "was let go." After sending a text message to the superintendent, asking if she could sign and deliver the contract when she returned on August 15, 2012, Yescas received word from the superintendent that her "offer for [that school year had] indeed expired."

**{5}** The Mora Federation of School Employees (the Union) filed grievances on behalf of the Employees, alleging that, in violation of the collective bargaining agreement (CBA) between the District and the Union, the Employees were terminated on August 12, 2016, without just cause. Pursuant to the CBA's grievance procedure, the parties submitted the grievances to arbitration. [3] Following a hearing, the arbitrator issued the Award, finding that the District violated the CBA by terminating the Employees without just cause.

**{6}** The Union filed a petition in the district court to confirm the Award under Section 44-7A-23, and the District filed a petition to vacate the Award under Section 44-7A-24. The district court denied the District's petition, granted the Union's petition, and confirmed the Award. The Board now appeals.

**DISCUSSION**

**{7}** The Board argues the district court erred in confirming the Award because it (1) applied the wrong standard for reviewing the Award; (2) failed to perform a "meaningful review" of the arbitrator's decision; and (3) should have vacated on grounds that the arbitrator exceeded his powers, engaged in misconduct, and demonstrated evident partiality. After outlining our standard of review on appeal, we address each argument in turn.

**A.      Standard of Review on Appeal**

**{8}** On appeal, we review "whether substantial evidence in the record supports the district court's findings of fact and whether the court correctly applied the law to the facts when making its conclusions of law[.]" *In re Arbitration Between Town of Silver City & Silver City Police Officers Ass'n* (*Silver City*), 1993-NMSC-037, ¶ 8, 115 N.M. 628, 857 P.2d 28 (citation omitted). "Substantial evidence is relevant evidence that a reasonable mind might accept as sufficient to support a conclusion." *Id.* "When determining whether a finding of fact is supported by substantial evidence, we review the evidence in the light most favorable to uphold the finding and indulge all reasonable inferences in support of the district court's decision." *Id.* We now turn to whether the district court applied the correct standard to review the arbitrator's award.

---

3Consistent with the Public Employee Bargaining Act (PEBA), NMSA 1978, §§ 10-7E-1 to -26 (2003, as amended through 2005), the CBA provided for a grievance procedure culminating in a final and binding decision by an arbitrator. *See* § 10-7E-17(F) (providing that a CBA's "grievance procedure shall provide for a final and binding determination[,]" which "shall constitute an arbitration award with the meaning of the Uniform Arbitration Act[, (UAA), NMSA 1978, §§ 44-7A-1 to -32 (2001)]"). Such decisions by the arbitrator are "subject to judicial review pursuant to the standard set forth in the [UAA]." Section 10-7E-17(F).

**B.      Standard of Review of the Arbitration Award by the District Court**

**{9}**      The Board first argues the district court applied the incorrect standard for reviewing the arbitrator's decision. At issue is whether the district court was required to review the arbitrator's decision under the standards set forth in *Fernandez v. Farmers Insurance Company of Arizona*, 1993-NMSC-035, 115 N.M. 622, 857 P.2d 22, or in *Board of Education of Carlsbad Municipal Schools v. Harrell*, 1994-NMSC-096, 118 N.M. 470, 882 P.2d 511. Under *Fernandez,* the district court's review of an arbitration award under the UAA is limited to allegations that "[the award was the result of] fraud, partiality, misconduct, excess of powers, or technical problems in the execution of the award," 1993-NMSC-035, ¶ 9, which may include, "under appropriate circumstances . . . [, a] mistake of fact or law so gross as to imply misconduct, fraud, or lack of fair and impartial judgment[.]" *Id.* ¶ 12.

**{10}**      By contrast, our Supreme Court in *Harrell*, held that the arbitrator's decision under NMSA 1978, Section 22-10-17.1(M) (1991)—later recompiled as NMSA 1978, Section 22-10A-28(M) (2003, amended 2019)— was incompatible with due process and separation of powers because it limited judicial review of an arbitration decision to allegations of "corruption, fraud, deception or collusion" and was not the product of voluntary agreement. *Harrell*, 1994-NMSC-096, ¶¶ 6, 15-17, 50. Under such circumstances, our Supreme Court concluded, the district court must perform a "meaningful review" of an arbitrator's decision, which requires a de novo review of the arbitrator's conclusions of law and an examination into whether the arbitrator's decision is "arbitrary, unlawful, unreasonable, capricious, or not based on substantial evidence." *Id.* ¶¶ 50-52 (internal quotation marks and citation omitted).

**{11}**      The Union argues *Harrell* is inapplicable to the case at bar because the District is not a "person" entitled to due process. *See id.* ¶ 21 ("The Fourteenth Amendment to the [United States] Constitution guarantees *citizens* the right to procedural due process in state proceedings." (emphasis added)); *City of Albuquerque v. Chavez*, 1997-NMCA-054, ¶ 12, 123 N.M. 428, 941 P.2d 509 (concluding that because an "arm of the state" is not a "person" as contemplated by the Fourteenth Amendment's Due Process Clause, it "has no constitutional right to due process"). Although the Board argues the District is more than a "faceless state government," and that it has a right to raise due process "as a judicial concern" under Section 44-7A-16(A)'s requirement that an arbitrator conduct arbitration "in such manner as the arbitrator considers appropriate for a fair and expeditious disposition of the proceeding[,]" the Board fails to address whether and to what extent the District is entitled to due process as contemplated by *Harrell* and fails to cite any authority bearing upon this issue. We therefore decline to review this argument further, *see Headley v. Morgan Mgmt. Corp.*, 2005-NMCA-045, ¶ 15, 137 N.M. 339, 110 P.3d 1076 (explaining that we "will not review unclear arguments or guess at what they might be"); *see also Curry v. Great Nw. Ins. Co.*, 2014-NMCA-031, ¶ 28, 320 P.3d 482 ("Where a party cites no authority to support an argument, we may assume no such authority exists."), and we move on to the Board's second argument that the district court failed to perform a "meaningful review" of the arbitrator's decision.

## C.    Meaningful Review of the Arbitrator's Decision

**{12}**    The Board argues the district court failed to perform a "meaningful review" of the arbitrator's decision because it did not permit the Board to present additional evidence at the hearing and allocated insufficient time for the hearing. We first note that this argument is based on an application of the standard set forth in *Harrell*, a standard which we have declined to require under the circumstances present in the case at bar. Moreover, the Board's argument is predicated on the notion that failing to permit the presentation of additional evidence at the hearing renders the district court's review inadequate, an argument for which the Board fails to cite any supporting authority. *See Curry*, 2014-NMCA-031, ¶ 28; *see also State v. Am. Fed'n of State, Cty., & Mun. Emp.s, Council 18, AFL-CIO, CLC* (*AFSCME*), 2012-NMCA-114, ¶ 14, 291 P.3d 600 ("The district court is not to apply a de novo review and should simply conduct an evidentiary hearing and enter findings of fact and conclusions of law with respect to each statutory basis raised as a ground for vacating or modifying the award." (internal quotation marks and citation omitted)). We therefore decline to review this argument further, and we proceed to an examination of the Board's argument regarding the district court's failure to vacate the Award.

## D.    Grounds for Vacatur of the Award

**{13}**    The Board challenges the district court's confirmation of the Award on two grounds, arguing that the arbitrator exceeded the scope of his authority by arbitrating the matter,[4] and that the arbitrator engaged in misconduct and demonstrated evident partiality. We address each argument in turn.

## 1.    The Arbitrator's Scope of Authority

**{14}**    The Board first challenges the failure to vacate the Award on the basis that the arbitrator was without the authority to arbitrate the matter. In particular, the Board argues the arbitrator had no authority under the CBA to arbitrate the grievances because (1) the Employees were not "employees" under the CBA at the time of their separation from employment with the District, and (2) the Employees were not "terminated" by the District. "[A]n arbitrator is considered to have exceeded his/her powers when the arbitrator rules on a matter that is beyond the scope of the arbitration agreement, inconsistent with the arbitration agreement, or removed from the arbitrator's consideration by statute or by case law." *AFSCME*, 2012-NMCA-114, ¶ 20. Before examining the Board's grounds for challenging the arbitrator's authority, we first review the scope of the arbitrator's authority under the CBA.

**{15}**    Here, the CBA provides that an "employee"—defined as "an employee within [the] bargaining unit for which the [Union] has been recognized as exclusive representative"—"may grieve disciplinary actions . . . through grievance procedures."

---

4Although the Board frames its argument as one of whether the arbitrator had "jurisdiction" to arbitrate the matter, we construe its argument as one of the arbitrator exceeding his powers, a basis for vacatur under Section 44-7A-24(a)(4).

The CBA's grievance procedure explains that when a grievant—defined as "an employee [or] group of employees of the [Union]"—and the Union are not satisfied with the superintendent's decision under the "internal stage" of the grievance procedure, the Union may submit a dispute over an alleged "violation, misinterpretation, or misapplication of [the CBA]" to arbitration. The CBA further provides that "[i]ssues related to the arbitrability of a grievance shall be decided by the arbitrator." In its provision regarding disciplinary actions, the CBA states that "[e]mployees will be disciplined for [j]ust [c]ause," and that such disciplinary actions may include "[t]erminations/[d]ischarge." Although it does not define "discharge," the CBA defines "termination" as a "permanent, involuntary separation from employment from the District for disciplinary reasons." We now turn to the arbitrator's finding that the Employees were "employees" under the CBA when they were separated from their employment in August 2016.

**{16}**   In its review of whether the Employees were no longer "employees" in August 2016, the arbitrator evaluated "the realities of the relationship between the parties," and found that the Employees "were on the District's payroll on August 12, 2016; that they were then providing services to and for the District, under the control of District supervisors; and that their terms and conditions of employment were then governed by the [CBA]." Further, the arbitrator noted that the Employees had not given any indication of an intent to resign or to reject the contracts provided to them; rather, the Employees requested a meeting with the administration to discuss the purported errors in the contracts. The arbitrator also considered the absence of any evidence indicating that a deadline to sign the contracts was set *prior to* the email sent on August 11, 2016—one day after delivering the written contracts to the District employees. Finally, the arbitrator explained that the 8:00 a.m. deadline on August 12, 2016, was "arbitrary" given that the District had delivered the written contracts to its employees well after the deadline found in Section 22-10A-23(B) (2003) ("Written employment contracts between local school boards or governing authorities of state agencies and certified school instructors shall be executed by the parties not later than ten days before the first day of a school year."). Under these circumstances, the arbitrator concluded that on August 12, 2016, the Employees were "employees" as contemplated under the CBA.

**{17}**   The district court agreed with the arbitrator and ruled that this finding was not demonstrative of a statutory basis for vacatur.[5] Based on our review of the testimonies of the Employees, we conclude the district court's ruling is supported by substantial evidence. *See Silver City*, 1993-NMSC-037, ¶ 8 (providing the substantial evidence standard). We also note that the district court's ruling in favor of the arbitrator's finding is

---

5We acknowledge the district court's written order did not indicate the grounds for confirming the arbitration award. Because the district court's oral ruling does not conflict with its written order, we base our analysis on the district court's oral ruling, in which it made findings of fact and conclusions of law with respect to the grounds for vacatur raised by the Board. *See Jeantete v. Jeantete*, 1990-NMCA-138, ¶ 11, 111 N.M. 417, 806 P.2d 66 ("On appeal, the reviewing court may consider the [district] court's verbal comments in order to clarify or discern the basis for the order or action of the court below."); *see also AFSCME*, 2012-NMCA-114, ¶ 14 (explaining that the district court should "enter findings of fact and conclusions of law with respect to each statutory basis raised as a ground for vacating or modifying the award" (internal quotation marks and citation omitted)).

further supported by Section 22-10A-23(B) (2003), which provided that "[d]elivery of the written acceptance of re[-]employment by a certified school instructor creates a binding employment contract between the certified school instructor and the local school board or the governing authority of the state agency until the parties enter into a formal written employment contract."

**{18}** The Board, however, highlights the statutory distinctions between "termination" and "discharge," *compare* NMSA 1978, § 22-10A-2(A) (2007) (defining "discharge" as "the act of severing the employment relationship with a certified school employee prior to the expiration of the current employment contract"), *with* § 22-10A-2(E) (2007) (defining "terminate" in the context of certified school employees as "the act of not re[-]employing an employee for the ensuing school year"), and argues that because the Union filed grievances for the "terminations" of the Employees, the Union essentially conceded that the Employees were not re-employed for the following year, and were therefore not "employees" as contemplated by the CBA. Nonetheless, we cannot conclude the district court erred in affirming the arbitrability of the grievances for the Employees, in light of the CBA's definition of "termination" as the "permanent, involuntary separation from employment from the District for disciplinary reasons," the CBA's failure to define "discharge," and the substantial evidence demonstrating the Employees' employment status at the time they received notice that their employment with the District had ended. We now turn to the question of whether the District *terminated* their employment such that the arbitrator had authority to arbitrate the matter.

**{19}** The Board disputes whether the District terminated the Employees or whether they effectively resigned from their positions by refusing to sign their contracts by the deadline set by the superintendent, the latter of which, the Board argues, would have removed these grievances from the scope of the arbitrator's authority under the CBA. While discussing this matter, the district court ruled:

> [A]ccording to [Section] 22-10A-23[(B)], once there was an acceptance of the offer of re[-]employment, an employment relationship does exist until it's replaced. I don't know when it was replaced. That was what the arbitrator decided. In looking at it as a Monday morning quarterback, I don't find his conclusions so shockingly gross as to be—as to imply bias, prejudice or fraud.

Indeed, there is substantial evidence that the Employees timely delivered their written acceptances of re-employment. Although they had not yet signed the written contracts when they received notice of their separation from employment on August 12, 2016, the Employees' acceptances of re-employment created binding employment contracts, which survive "until the parties enter into a formal written employment contract." Section 22-10A-23(B) (2003).[6] Because the Employees were re-employed for the

---

6To the extent the Board argues the grievances, arbitration, and confirmation of the Award are in conflict with NMSA 1978, Section 37-1-23(A) (1976) ("Governmental entities are granted immunity from actions based on contract, except actions based on a valid written contract."), because they are predicated on employment

following school year, we conclude the district court did not err in affirming the arbitrability of their grievances under the CBA. And although the Board argues the scope of the arbitrator's power extends only to those grievances that accrue during the time the employee is subject to the CBA, the CBA expressly provides a grievance procedure for disputing terminations. Having concluded substantial evidence supports the district court's findings bearing upon arbitrability, we affirm the district court's denial of the Board's petition to vacate the Award on the basis that the arbitrator exceeded his powers. We therefore examine the Board's remaining arguments for vacatur.

## 2.      Misconduct and Evident Partiality

**{20}**    The Board also challenges the district court's failure to vacate the Award on the basis that the arbitrator's rulings on the arbitrability of the Employees' grievances were demonstrative of misconduct and evident partiality. The district court found that the arbitrator's findings of fact and law were not "so shockingly gross as to" vacate the Award under *Fernandez*. *See* 1993-NMSC-035, ¶ 12 (explaining that "the district court may find an [arbitrator's] mistake of fact or law so gross as to imply misconduct, fraud, or lack of fair and impartial judgment"). In light of the substantial evidence supporting the district court's findings confirming the Award, we conclude the district court did not err in finding that there were no mistakes of fact or law rising to the level of vacatur under *Fernandez*.

## CONCLUSION

**{21}**     For the foregoing reasons, we affirm the district court's order denying the Board's petition to vacate the Award and granting the Union's petition to confirm the Award.

**{22}    IT IS SO ORDERED**.

**JULIE J. VARGAS, Judge**

**WE CONCUR:**

**JENNIFER L. ATTREP, Judge**

**KRISTINA BOGARDUS, Judge**

---

relationships based not on written contracts but on the written acceptance of re-employment under Section 22-10A-23(B) (2003), the Board's argument misinterprets the basis for the case at bar. We are presented with an appeal from the district court's confirmation of an arbitration award, which was the product of arbitration emanating not from the Employees' employment contracts, but from the CBA. *See Callahan v. N.M. Fed'n of Teachers-TVI*, 2006-NMSC-010, ¶ 19, 139 N.M. 201, 131 P.3d 51 (explaining that collective bargaining agreements are contracts between the labor organization and the employer).