This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

No. A-1-CA-38036

**STATE OF NEW MEXICO ex rel.
CHILDREN, YOUTH & FAMILIES
DEPARTMENT,**

Petitioner-Appellee,

v.

**RANDALL T.,**

Respondent-Appellant,

and

**JANISE A. and STACEY B.,**

Respondents.

**IN THE MATTER OF E.C.,
T.C., K.C., B.A., and C.B.,**

Children.

**APPEAL FROM THE DISTRICT COURT OF CHAVES COUNTY
Kea W. Riggs, District Judge**

Children, Youth & Families Department
Rebecca J. Liggett, Chief Children's Court Attorney
Robert Retherford, Children's Court Attorney
Santa Fe, NM

for Appellee

Roybal-Mack & Cordova, P.C.
Antonia Roybal-Mack
Albuquerque, NM

for Appellant

JulieAnne Hufstedler Leonard, PC
JulieAnne Hufstedler Leonard
Capitan, NM

Guardian Ad Litem

**MEMORANDUM OPINION**

**VARGAS, Judge.**

**{1}** Randall T. (Father) appeals the district court's termination of his parental rights to his two daughters. (collectively, Children). Finding no error by the district court, we affirm.

**BACKGROUND**

**{2}** The Children, Youth and Families Department (the Department) filed its original abuse and neglect petition[1] against Children's mother regarding older daughter on August 22, 2017, after it received reports that older daughter was being physically neglected, with inadequate food, shelter, and supervision. The affidavit filed in support of the petition reported that when Department investigators visited Children's house, the home was covered in old, moldy clothes and garbage, and smelled of urine and animal feces. Additionally, older daughter and some of mother's other children were found under the supervision of their maternal grandmother who stated that she had not seen their mother in a few days, that their mother had left with younger daughter, and grandmother had been unable to enroll the children in school because she was not their legal guardian. The report noted that older daughter and the other children slept on mattresses on the floor that were covered in feces and urine stains, and the only food in the home was a couple bags of chips, some tortillas, and eggs.

**{3}** During their initial visit, investigators spoke with Father, who is mother's half-brother, and at the time, was identified only as Children's maternal uncle. Father advised investigators that he lived in the home with Children. The report noted that "[t]here are some questions about paternity, the Department will continue to investigate." Finding that older daughter and mother's other children were in immediate danger and that there was no parent or guardian able to provide adequate care and supervision, the district court awarded custody to the Department following a hearing.

**{4}** Several weeks after the Department's initial investigation, it took custody of younger daughter after mother appeared at the Department's offices with younger daughter and reported that she was homeless and had no money or transportation. Older daughter and younger daughter each tested positive for methamphetamines

---

1The original abuse and/or neglect petition and amended petition name other children and respondents who are omitted because they are neither relevant to nor a part of Father's appeal.

when they were taken into custody by the Department. The Department filed a petition alleging abuse and neglect against mother and Father related to younger daughter on September 28, 2017, again identifying Father as younger daughter's uncle. The district court also awarded custody of younger daughter to the Department following a hearing, similarly finding that younger daughter was in immediate danger and that there was no parent or guardian able to provide adequate care and supervision. On October 18, 2017, trial counsel entered her appearance on behalf of Father. On October 24, 2017, Father was apparently added as a respondent in the abuse and neglect proceedings related to older daughter. The district court subsequently consolidated the abuse and neglect proceedings involving Children.

**{5}**     On December 12, 2017, the district court ordered paternity testing to determine whether Father was the biological father of Children. The testing revealed that Father was Children's biological maternal uncle and father and on January 9, 2018, the Department filed an amended abuse and neglect petition, alleging Father had abused and neglected Children by his action or inaction, resulting in physical, emotional, or psychological abuse, leaving Children without proper parental care and control or subsistence, education, medical or other care necessary for their well-being.

**{6}**     Father failed to appear at his adjudication and disposition hearing held on March 13, 2018, at which time the district court found that Children had suffered physical, emotional, or psychological abuse and that Father did not or could not provide proper subsistence, education, medical or other care or control necessary for Children's well-being. The district court adopted the treatment plan proposed by the Department requiring Father to, among other things, maintain contact with the Department and his attorney, participate in scheduled visits with Children, maintain stable housing and stable employment, provide proof of income, undergo assessments for substance abuse issues and mental health issues and follow all recommendations, maintain his sobriety and undergo random drug screens, and attend and participate in therapy to learn and understand the effects of his incestuous relationship with Children's mother on Children and to set appropriate boundaries.

**{7}**     On August 22, 2018, the Department filed its motion to terminate Father's parental rights, alleging that Father had not complied with the treatment plan and that the causes and conditions that brought Children into the Department's care had not been alleviated. The termination of parental rights (TPR) hearing was held on October 12, 2018, and following trial, the district court granted the Department's motion terminating Father's parental rights. This appeal followed.

**DISCUSSION**

**{8}**     On appeal, Father raises four issues: (1) whether the district court erred when it concluded that the Department proved by clear and convincing evidence that the Department made reasonable efforts to assist Father; (2) whether the district court erred when it concluded that the Department proved by clear and convincing evidence that the conditions and causes of Children's neglect were unlikely to change within the

foreseeable future; (3) whether the district court erred when it concluded that the termination of Father's parental rights was in Children's best interest; and (4) whether Father was denied due process.

## I.      Standard of Review

{9}      "The standard of proof in cases involving the termination of parental rights is clear and convincing evidence." *State ex rel. Children, Youth & Families Dep't v. Vanessa C.*, 2000-NMCA-025, ¶ 24, 128 N.M. 701, 997 P.2d 833. "Clear and convincing evidence is . . . evidence that instantly tilts the scales in the affirmative when weighed against the evidence in opposition and the fact[-]finder's mind is left with an abiding conviction that the evidence is true." *State ex rel. Children, Youth & Families Dep't v. Lance K.*, 2009-NMCA-054, ¶ 16, 146 N.M. 286, 209 P.3d 778 (alteration, internal quotation marks, and citation omitted). "We will uphold the district court's judgment if, viewing the evidence in the light most favorable to the judgment, [the district court] could properly determine that the clear and convincing standard was met." *State ex rel. Children, Youth & Families Dep't v. Hector C.*, 2008-NMCA-079, ¶ 11, 144 N.M. 222, 185 P.3d 1072 (internal quotation marks and citation omitted). Thus, the question before us is "whether the [district] court's conclusion, when viewed in the light most favorable to the decision below, was supported by substantial evidence, not whether the [district] court could have reached a different conclusion." *State ex rel. Children, Youth & Families Dep't v. Patricia H.*, 2002-NMCA-061, ¶ 31, 132 N.M. 299, 47 P.3d 859. Finally, this Court does not "assess the credibility of the witnesses, deferring instead to the conclusions of the [district court]." *Vanessa C.*, 2000-NMCA-025, ¶ 24.

## II.      The District Court Properly Concluded That the Department Proved by Clear and Convincing Evidence That It Made Reasonable Efforts to Assist Father

{10}      NMSA 1978, Section 32A-4-28(B)(2) (2005) requires that the Department demonstrate that it made reasonable efforts to assist the parent to adjust the conditions and causes that rendered him unable to properly care for an abused or neglected child. When reviewing the reasonableness of the Department's efforts we consider the totality of the circumstances. *State ex rel. Children, Youth & Families Dep't v. Keon H.*, 2018-NMSC-033, ¶ 38, 421 P.3d 814. The Department's "efforts should be directed to assist the parent in remedying the conditions and causes of neglect and abuse." *Id.* ¶ 41. "Efforts to assist a parent may include individual, group, and family counseling, substance abuse treatment, mental health services, transportation, childcare, and other therapeutic services." *Id.* (internal quotation marks and citation omitted). "[W]hat constitutes reasonable efforts may vary with a number of factors, such as the level of cooperation demonstrated by the parent and the recalcitrance of the problems that render the parent unable to provide adequate parenting." *Id.* (internal quotation marks and citation omitted). "[O]ur job is not to determine whether [the Department] did everything possible; our task is limited by our statutory scope of review to whether [the Department] complied with the minimum required under law." *Patricia H.*, 2002-NMCA-061, ¶ 28.

**{11}**     Here, the district court ruled that the Department proved by clear and convincing evidence that "[it] had made reasonable, diligent and ongoing efforts under the circumstances to assist [F]ather in addressing the conditions that render[ed] him unable to properly care for [Children.]" In reaching its conclusion, the district court found that the Department "created a treatment plan for Father to address the causes and conditions that brought . . . [C]hildren into custody," the Department "made repeated and ongoing efforts throughout the case to maintain contact with Father and engage Father in the treatment plan[,]" and the Department "made available, or attempted to make available, services and support designed to correct Father's inability or unwillingness to provide proper parental care or control for Children."

**{12}**     At the hearing, the Department offered the testimony of Jennifer Lewis, the Department's permanency planning worker (PPW) assigned to the case. Lewis explained that she created a treatment plan for Father to help address the issues that brought Children into the Department's care, but that she had difficulty reviewing or discussing the treatment plan with Father because he very seldom had a phone and she did not know where he was. Lewis attempted to reach out to Father through the court appointed special advocate (CASA) when Father came to visit Children, asking CASA volunteers to give him messages to contact her or deliver referrals for drug testing. She also maintained communication with Father's attorney in attempts to contact him. Finally, Lewis explained that Father would sometimes come into the Department's offices to ask for help. She would schedule appointments for him, but he would not return at the appointed time. On the occasions she attempted to review the treatment plan with him, he got angry or explosive and she was not able to review the entire plan with Father until August 2018, when his attorney was present and the three of them went over it together.

**{13}**     Lewis testified that the key issues for Father resulting in the abuse and neglect of Children were housing instability, substance abuse issues, mental health, domestic violence, and the incestuous relationship between Father and mother. To implement the treatment plan and address the issues that brought the Children into custody, Lewis twice referred Father to La Familia Mental Health for drug and alcohol assessments and psychological evaluations and scheduled two appointments for a mental health assessment for Father. Lewis made appointments for Father to discuss and arrange for outpatient substance abuse treatment where he could also receive housing assistance. She made referrals for domestic violence and mental health counseling, including referrals to group counseling and parenting classes, as well as referrals for counseling to address relationship boundaries and his incestuous relationship with mother. Lewis also attempted to assist Father in securing his birth certificate, so he could obtain identification to seek employment and housing and offered him monthly bus passes that would allow Father to attend his visitations and counseling appointments. Lewis arranged supervised visitation with the Children, first at the Department, and then at the CASA offices, and included Father in activities outside of visitation, including the Department's fall festival, Christmas party, and May water event. In addition to Lewis, Lori Chitwood and her husband, CASA volunteers, assisted Father with visitations and attempted to help Father obtain his birth certificate.

**{14}** Father argues that the Department's failures to make reasonable efforts to assist him were five-fold. Father contends: (1) Lewis was difficult for Father to contact; (2) the Department made no efforts to assist Father to find employment beyond helping Father obtain a birth certificate; (3) the Department made little effort to assist Father to find housing or to address Father's drug dependency, beyond limited referrals; (4) the filing of the termination of parental rights was premature because it occurred only five months after the abuse and neglect finding; and (5) the Department failed to assist Father in scheduling psychological evaluations and in addressing his mental health needs.

**{15}** We find Father's claims meritless. While Father contends Lewis was difficult to contact, the evidence supports the district court's conclusion that Father failed to maintain contact with the Department, interfering with its ability to assist him in rectifying the conditions that caused Children to be brought into Department custody. As Lewis explained, Father did not have a phone, she did not know where to reach him, and she was forced to resort to sending messages through CASA volunteers and Father's attorney. Although Father testified that when he called Lewis, he usually got her voicemail, he did not leave Lewis messages. Finally, Lewis explained, and Father conceded, that Father would sometimes come into the Department's offices to ask for help and Lewis would schedule appointments for him, but he would not return at the appointed time. While Father testified that he sometimes had difficulty reaching Lewis and that she was "too busy" to help him, our standard of review does not permit us to reweigh the evidence and requires that we "consider the evidence in the light most favorable to the prevailing party and disregard any inferences and evidence to the contrary." *State ex rel. Children, Youth & Families Dep't v. Mercer-Smith*, 2015-NMCA-093, ¶ 29, 356 P.3d 26 (internal quotation marks and citation omitted), *overruled on other grounds*, 2019-NMSC-005, 434 P.3d 930. The district court's conclusion that Father failed to maintain consistent contact with the Department is supported by clear and convincing evidence and Father's failure to maintain contact with the Department served as an impediment to Father's ability to take advantage of the services it offered to him to address the reasons for Children's abuse and neglect.

**{16}** With regard to Father's claim that the Department failed to address his drug dependency, psychological, and mental health needs beyond limited referrals, we note that Father failed to cooperate in any of the efforts made by the Department in those regards. Father failed to participate in the mandatory drug testing required by the Department. He failed to attend appointments to discuss his substance abuse issues. Father failed to take advantage of the referral to La Familia until the Department made a second referral in August 2018, at which point he attended two group counseling classes, but did not take part in any of the required assessments. Lewis also scheduled two mental health evaluations for Father. He failed to attend the first appointment. On the day of the second appointment, Father came to the Department to talk about visitation and his birth certificate, but had apparently forgotten about the appointment for his mental health evaluation. He nonetheless met with the doctor for about twenty minutes at which point the doctor ended the appointment, though the record is unclear as to why. In light of Father's failure to cooperate or participate in the services offered by the Department, we cannot agree that its efforts to address Father's drug

dependency, psychological, and mental health needs were not reasonable. *See Patricia H.*, 2002-NMCA-061, ¶ 23 (noting that reasonable efforts may vary with a number of factors, including "the level of cooperation demonstrated by the parent and the recalcitrance of the problems that render the parent unable to provide adequate parenting"); *State ex rel. Children, Youth & Families Dep't v. Tammy S.*, 1999-NMCA-009, ¶ 15, 126 664, 974 P.2d 158 (holding that "[the f]ather's transience, failure to communicate, and lack of cooperation rendered the [d]epartment's efforts sufficient").

{17}    Father also alleges that the Department's efforts to assist him with employment and housing were not reasonable. The record indicates that Father did not have any identification, without which he was unable to secure employment. Both Ms. Lewis, the PPW, and Ms. Chitwood of CASA, attempted to assist Father in obtaining a copy of his birth certificate so that he could obtain identification. Father, however, failed to follow through with the necessary steps to obtain his birth certificate. Until Father made arrangements to obtain his identification, it is unclear what more the Department could do to assist Father with regard to employment and housing.

{18}    Father also claims that "given Father's methamphetamine use, and the evidence of his recent engagement and progress with his treatment, [the Department's] motion to sever his rights only five months after his adjudicatory hearing was premature." Father ignores that, while he was not adjudicated until March 2018, he was involved in the proceedings since at least October 18, 2017, when his trial counsel entered her appearance on behalf of Father in response to the Department's abuse and neglect petition regarding younger daughter. In January 2018 the Department referred Father for mental health, substance abuse, and domestic violence assessments, none of which Father pursued. And even after Father was adjudicated to have abused and neglected Children in March 2018, he did nothing in the five months that followed the adjudication with the exception of attending some scheduled visitation. He did not keep in contact with the Department and did not attend scheduled appointments, he did not go for required drug testing, he did not make arrangements for any of the required assessments or resulting treatment, he did not take steps to obtain his birth certificate so he could pursue employment and housing. While he finally reviewed his treatment plan with the Department and attended a couple of counseling sessions in the month before the TPR hearing, we cannot agree that the Department's actions were premature. In light of Father's "transience, failure to communicate, and lack of cooperation" during the pendency of the proceedings, we conclude that the Department's efforts were sufficient. *Id.* ¶ 15.

### III. The District Court Properly Concluded That the Department Proved by Clear and Convincing Evidence That the Conditions and Causes of Children's Neglect Were Unlikely to Change

{19}    Having concluded that the district court did not err in finding that the Department made reasonable efforts to assist Father, we now turn to Father's claim that the district court erred in finding that the conditions and causes of Children's neglect were unlikely to change in the foreseeable future. *See* § 32A-4-28(B)(2) (requiring that the district

court find by clear and convincing evidence that "the conditions and causes of the neglect and abuse are unlikely to change in the foreseeable future, despite the reasonable efforts of [the Department] to assist the parent"). "We have interpreted the term 'foreseeable future' to refer to corrective change within a reasonably definite time or within the near future." *Patricia H.*, 2002-NMCA-061, ¶ 34. (internal quotation marks and citation omitted).

**{20}** The district court ruled that the Department proved by clear and convincing evidence that "Father has not alleviated the causes and conditions that brought [Children] into custody and it is not reasonable to believe that he will do so in the foreseeable future[.]" The district court also found that Children came into the Department's custody due to unsafe conditions of the home, Father's inability to meet Children's basic needs, Father's substance abuse issues and drug exposure to Children, the on-going incestuous relationship between Father and Children's mother, and domestic violence and mental health issues. The district court found that Father failed to address those issues in his treatment plan because he failed to maintain contact or attend scheduled appointments with the Department, failed to maintain sobriety and attend scheduled drug screenings, failed to attend scheduled mental health and drug and alcohol assessments, and failed to establish a safe and stable household, obtain employment, and attend all scheduled visitations. The district court found that Father had "clearly and repeatedly demonstrated his fundamental unwillingness to utilize [the Department's] services and support by intentionally making himself unavailable to [the Department], by failing to accept the assistance offered by [the Department] and by failing to work on or complete his treatment plan[,]" and "ha[d] made no efforts to address the causes and conditions that brought . . . Children into custody."

**{21}** Ms. Lewis testified that while she made many of the referrals and appointments for Father discussed above to address the causes and conditions of Children's neglect, the success of such efforts were limited because he missed scheduled appointments, failed to maintain contact, and when he did attend, was often emotional and explosive. Ms. Lewis testified that throughout the process, Father continued to be homeless, with no evidence that he had made any effort to obtain stable and appropriate housing, continued to abuse methamphetamines, made no effort to address mental health or substance abuse concerns, did not pursue any domestic violence counseling to address his anger issues or relationship counseling to address his incestuous relationship, and did not take any action on the Department's efforts to help Father obtain his birth certificate or to obtain stable employment. Ms. Lewis expressed concerns that while Father did demonstrate some healthy parenting skills and attended most of visitations scheduled with Children, there were many times that Father would become angry and volatile in front of Children and become angry at the Department staff. Ms. Lewis concluded that Father had not addressed any of the causes and conditions that brought Children into the Department's custody, that all of the causes and conditions still exist, and that Father could not reasonable address those causes and conditions in the near future.

**{22}** The Department also offered the testimony of Joe Vanderme, who conducted Father's drug screenings. Mr. Vanderme testified that Father tested positive for methamphetamines on two tests and failed to attend any other scheduled tests or refused to complete tests from September 2018 onward. Indeed, when asked by the judge at the TPR hearing whether Father would pass a drug test, Father answered, "No."

**{23}** Ms. Chitwood also testified that she was concerned that Father was still living with Children's mother, and that she saw, on numerous occasions, signs that Father and Children's mother had been engaged in arguments in front of Children that left Father with bleeding scratches on his face, arms, and neck. Additionally, Ms. Chitwood testified that during numerous visits with Children, Father became emotional and explosive, causing Children to become upset, and further expressed concerns that Father was stalking Children.

**{24}** Father argues that the district court did not consider that Father had begun engaging in treatment goals by attending recovery group meetings, speaking with the clinical social worker, attending parenting classes and visiting Children through CASA, when the Department filed the motion to terminate Father's parental rights. In light of the long list of Father's failures to comply with the terms of his treatment plan, and the scant evidence of his recent engagement with the treatment plan, we cannot conclude that the district court erred. "We consider the evidence in the light most favorable to the prevailing party and disregard any inferences and evidence to the contrary." *Mercer-Smith*, 2015-NMCA-093, ¶ 29 (internal quotation marks and citation omitted). Given these considerations, including the testimony and exhibits, and disregarding all evidence and inferences to the contrary, we hold that there is clear and convincing evidence to support the district court's conclusion that the conditions and causes of Children's abuse and neglect were unlikely to change in the foreseeable future.

**IV. The District Court Properly Concluded That the Termination of Father's Parental Rights Was in Children's Best Interest**

**{25}** Citing to the Domestic Affairs Code, rather than the Children's Code, Father argues that the district court erred in finding that the termination of his parental rights would be in Children's best interest, claiming that "the sole witness who testified as to [Children's] best interests was Ms. Lewis" who "was not qualified as an expert to give that opinion" and the testimony of other witnesses does not support such a finding.

**{26}** Initially, we note that the record does not support any reliance by the district court on Ms. Lewis's testimony that she thought termination of Father's parental rights was in Children's best interests. Instead, the district court entered extensive findings of fact detailing Children's abuse and neglect, the efforts made by the Department to assist Father, and Father's failure to take the steps necessary to remedy those conditions of abuse and neglect.

**{27}** Turning to Father's argument that we should consider factors from the Domestic Affairs Code in our analysis of Father's parental rights, we note that Father has provided us with no authority to support his claim that those factors should be applied to TPR proceedings, *see Curry v. Great Nw. Ins. Co.*, 2014-NMCA-031, ¶ 28, 320 P.3d 482 ("Where a party cites no authority to support an argument, we assume no such authority exists."), and we are not persuaded that it would be appropriate to do so. While the Domestic Affairs Code permits courts to consider factors such as the wishes of both parents and children in determining the best interest of the child in divorce and child custody proceedings, *see* NMSA 1978, Section 40-4-9 (1977), those wishes, while not irrelevant in proceedings to terminate parental rights, must be subordinate to factors intended to address the protection of the child from the abuse and neglect that precipitated the TPR proceedings, such as whether "the conditions and causes of the neglect and abuse are unlikely to change in the foreseeable future." Section 32A-4-28(B)(2). In *State ex rel. Children, Youth & Families Dep't v. Raymond D.*, 2017-NMCA-067, ¶ 16, 404 P.3d 15, this Court explained that under the circumstances of that case, as is the case here, "proof of [the c]hild's best interests hinges on resolution of factual questions, namely: (1) whether [the f]ather would remedy the conditions of neglect quickly enough in the future to meet [the c]hild's needs; and (2) the related question of whether [the f]ather should have been allowed more time to attempt to remedy the causes and conditions of neglect." Here, the district court answered both questions in the negative, finding that "Father has not alleviated the causes and conditions that brought [Children] into custody and it is not reasonable to believe that he will do so in the foreseeable future[.]" As explained above, given the extensive testimony concerning Father's failure to maintain contact with the Department, as well as his failure to make efforts, beyond his visitation of Children and attendance at a couple of group counseling sessions to address the causes and conditions of Children's abuse and neglect, we see no error in the district court's conclusion that the termination of Father's parental rights was in Children's mental and emotional best interests.

## V. We Decline to Review Father's Unpreserved Due Process Claim

**{28}** Lastly, Father argues that his due process rights were violated when his parental rights were terminated despite the Department's refusal to assign a new PPW to Father's case, allow additional time for Father to comply with his treatment plan, or reschedule mental or psychological evaluations. Rule 12-321 NMRA requires that issues and errors be preserved before we will review them. *See* Rule 12-321(A) ("To preserve an issue for review, it must appear that a ruling or decision by the trial court was fairly invoked."). In this case, Father concedes that his due process argument was not raised below but asks this Court to exercise its discretion authorized by Rule 12-321(B)(2) to review the argument because it touches on "his fundamental right of care, custody and control of Children." *See* Rule 12-321(B)(2) (allowing an "appellate court, in its discretion [to] consider[] issues . . . raised for the first time on appeal . . . involving (a) general public interest; (b) plain error; (c) fundamental error; or (d) fundamental rights of a party"). We decline to do so because Father fails to direct us to anything in the record to indicate that he requested the process he now claims was denied to him. Father has failed to direct us to anything in the record to support his claim that the Department

refused his request to assign a new PPW and our review has not uncovered any such request. Similarly, Father has failed to point to anything in the record to indicate that he requested additional time or that he requested that his evaluations be rescheduled. "We will not search the record for facts, arguments, and rulings in order to support generalized arguments." *Muse v. Muse*, 2009-NMCA-003, ¶ 72, 145 N.M. 451, 200 P.3d 104. Because Father failed to preserve his due process argument below, *see State v. Leon*, 2013-NMCA-011, ¶ 33, 292 P.3d 493 (holding that "[w]e generally do not consider issues on appeal that are not preserved below" (internal quotation marks and citation omitted)), or point us to the location in the record that would allow us to review it under Rule 12-321(B)(2), we decline to address it.

**CONCLUSION**

**{29}**   We affirm.

**{30}   IT IS SO ORDERED.**

**JULIE J. VARGAS, Judge**

**WE CONCUR:**

**JENNIFER L. ATTREP, Judge**

**KRISTINA BOGARDUS, Judge**